

**FILED**
U. S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

MAY 2 4 2019

JAMES W. McCORMACK, CLERK
By:_____
DEP CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS

GAVILON GRAIN, LLC                      )
                                        )
           Plaintiff,                   )          CIVIL ACTION NO.
                                        )
      vs.                               )          2:19-cv-58-JM
                                        )
K & A SEALY FARMS, an Arkansas          )
General Partnership; C & A              )
HEIDELBERGER FARMS, an Arkansas         )
General Partnership; BROCATO &          )          This case assigned to District Judge _Moody_
UNGER FARMS, an Arkansas General        )          and to Magistrate Judge _Volpe_
Partnership; PHARR FARMS, an            )
Arkansas  General Partnership; and C & D )
FARMS, an Arkansas  General             )
Partnership                             )
           Defendants.                  )

## PETITION TO COMPEL ARBITRATION

### Introduction

Gavilon Grain, LLC ("Gavilon") files this Petition to Compel Arbitration under 9 U.S.C.

§ 4 of the Federal Arbitration Act. K&A Sealey Farms, C&A Heidelberger Farms, Brocato &

Unger Farms, Pharr Farms, and C&D Farms (collectively, the "Farms") each entered into an

arbitration agreement that requires them to arbitrate their claims against Gavilon. The Farms

have violated these agreements by filing a complaint against Gavilon in Arkansas state court.

Under section 4 of the Federal Arbitration Act, this Court should enforce the arbitration

agreements and compel the Farms to arbitrate their claims.

### Parties

1.      Gavilon Grain, LLC is a Delaware limited liability corporation with its principal

place of business in Omaha, Nebraska. The following is its ownership structure: Gavilon Grain,

LLC is wholly owned by Gavilon Global Ag Holdings, LLC; which is wholly owned by The

Gavilon Group, LLC; which is wholly owned by Marble Gold V LLC; which is wholly owned

by Gavilon Agriculture Investment, Inc. Gavilon Agriculture Investment, Inc. is a Delaware corporation with its principal place of business in Nebraska. Gavilon Grain, LLC is therefore a citizen of Delaware and Nebraska.

2.      K&A Sealy Farms is an Arkansas general partnership with its principal place of business in Arkansas.

3.      C & A Heidelberger Farms is an Arkansas general partnership with its principal place of business in Arkansas.

4.      Brocato & Unger Farms is an Arkansas general partnership with its principal place of business in Arkansas.

5.      Pharr Farms is an Arkansas general partnership with its principal place of business in Arkansas.

6.      C&D Farms is an Arkansas general partnership with its principal place of business in Arkansas.

<strong>Jurisdiction and Venue</strong>

7.      This court has jurisdiction under 28 U.S.C. § 1332 and 28 U.S.C. § 1367. All defendants are citizens of Arkansas. Gavilon is a citizen of Delaware and Nebraska. Complete diversity between the parties therefore exists, and the amount in controversy exceeds $75,000. (*See* Ex. A, State Court Compl. at 9 (seeking $250,000 in punitive damages in addition to actual damages and attorneys' fees)). Additionally, all of the plaintiffs' claims are so related that they form part of the same case or controversy under Article III of the United States Constitution.

8.      Venue is proper under 9 U.S.C § 4 because, save for the arbitration agreement, jurisdiction would be proper in this Court, and the arbitration provision does not identify another location for the arbitration to take place.

**Facts**

9.      The Farms are agricultural entities engaged in soybean production.

10.      In 2018, Gavilon Grain, LLC entered into a series of agreements to purchase soybeans from the each of Farms. (Ex. B, K&A Sealy Farms Contract; Ex. C, C & A Heidelberger Farms Contract; Ex. D, Brocato & Unger Farms Contract; Ex. E, Pharr Farms Contract; Ex. F, C&D Farms Contract.)

11.      Each contract contains the following Arbitration Provision:

CONTROVERSIES: Controversies and/or other disagreements between Buyer and Seller arising under this Contract shall be settled by arbitration which shall be a condition precedent to any right of legal action that either Buyer or Seller may have against the other party. Any arbitration shall be in accordance with the rules of the National Grain and Feed Association [NGFA]. At the time notice of arbitration is served by either Buyer or Seller upon the other, (I) if either is a member of NGFA, the NGFA Arbitration Committee shall serve as the arbitrator; (ii) if neither is a member of the NGFA, the American Arbitration Association shall serve as the arbitrator.

(Exs. B-F, at 2.)

12.      On April 8, 2019, the Farms filed suit against Gavilon in the Circuit Court of Phillips County, Arkansas.

13.      In an apparent effort to avoid arbitration, the Farms characterized their claims—which arise from the purchase and sale of soybean—as tort claims for deceit and negligence. Nonetheless, the Farms' claims against Gavilon arise under the parties' contracts. Specifically, the Farms claim that Gavilon did not pay them the amount it promised.

14.      In order to avoid federal diversity jurisdiction, the Farms named Gavilon employee, Robert Rhodes, as a defendant in the state court suit. The Farms' claims against Rhodes are based on alleged actions in his capacity as and employee and agent of Gavilon, and seek to hold Gavilon vicariously liable for Rhodes' action. The Farms' claims against Rhodes therefore arose under the parties' contract and are subject to arbitration.

15.     Despite the Arbitration Provision's requirement that arbitration is "a condition precedent to *any right of legal action* that either Buyer or Seller may have against the other party," the Farms did not seek arbitration prior to filing suit.

### Count I – Compel Arbitration Under the Federal Arbitration Act

16.     Gavilon incorporates and realleges the allegations in Paragraphs 1–14.

17.     Gavilon has a valid Arbitration Provision with each of the Farms. (*See* Exs. B-F, at 2.)

18.     Despite the Arbitration Provisions, the Farms have failed to arbitrate their claims against Gavilon as they are obligated to do.

19.     Instead, the Farms filed suit against Gavilon in the Circuit Court of Phillips County, Arkansas.

20.     The Farms' claims in the Phillips County lawsuit arise from their contracts with Gavilon and are covered by the Arbitration Agreement.

21.     Additionally, under the Arbitration Provision, arbitration is a condition precedent to *any* legal claims brought by either the Farms or Gavilon against the other. Because the Farms have not arbitrated their claims, that condition precedent has not been met.

22.     Gavilon has been aggrieved by the Farms' failure to arbitrate their claims.

23.     Under 9 U.S.C. § 4 of the Federal Arbitration Act, Gavilon is entitled to an order compelling the Farms to arbitrate their claims.

### Prayer for Relief

For these reasons, Gavilon respectfully requests that the Court enter an order (1) enforcing the Arbitration Provisions; and (2) compelling the Farms to arbitrate its claims.

Dated this __24th__ of May, 2019.

4

Respectfully Submitted,

Clayborne S. Stone (Ark. Bar No. 2003102)
MITCHELL, WILLIAMS, SELIG,
 GATES & WOODYARD, P.L.L.C.
425 West Capitol Avenue, Suite 1800
Little Rock, Arkansas 72201
Phone:  501-688-8886
Fax:  501-918-7886
Email: *cstone@mwlaw.com*

-and-

James G. Powers (NE Bar No. 17780)
(*Pro Hac Vice Pending*)
Maryl C. Sattler (NE Bar No. 25869)
(*Pro Hac Vice Pending*)
First National Tower, Suite 3700
1601 Dodge Street
Omaha, Nebraska  68102
Phone:  402-341-3070
Fax:  402-341-0216
Email:  jpowers@mcgrathnorth.com
             msattler@mcgrathnorth.com

*Attorneys for Gavilon Grain, LLC*



FILED
AT 10:30 O'Clock A M

IN THE CIRCUIT COURT OF PHILLIPS COUNTY, ARKANSAS
CIVIL DIVISION

LYNN STILLWELL
PHILLIPS COUNTY CIRCUIT CLERK
By _____ D.C.

K & A SEALY FARMS, an Arkansas General Partnership;
C & A HEIDELBERGER FARMS, an Arkansas General
Partnership; BROCATO & UNGER FARMS, an Arkansas
General Partnership; PHARR FARMS, an Arkansas General
Partnership; DAYTON PHARR FARMS, an Arkansas
General Partnership; and C & D FARMS, an Arkansas
General Partnership                                    **PLAINTIFFS**

VS.

ROBERT RHODES AND GAVILON
GRAIN, LLC                                             **DEFENDANTS**

### COMPLAINT

COME NOW Plaintiffs, by and through their attorney, Donald E. Knapp, Jr., and for
their Complaint against Defendants, state:

### I.    JURISDICTION AND VENUE

1. Plaintiff K & A Sealy Farms is an Arkansas General Partnership having its principal
place of business in Phillips County, Arkansas.

2. Plaintiff C & A Heidelberger Farms is an Arkansas General Partnership having its
principal place of business in Phillips County, Arkansas.

3. Plaintiff Brocato & Unger Farms is an Arkansas General Partnership having its
principal place of business in Phillips County, Arkansas.

4. Plaintiff Pharr Farms is an Arkansas General Partnership having its principal place of
business in Arkansas County, Arkansas.

5. Plaintiff Dayton Pharr Farms is an Arkansas General Partnership having its principal
place of business in Jefferson County, Arkansas.


EXHIBIT
**A**

6. Plaintiff C & D Farms is an Arkansas General Partnership having its principal place of business in Jefferson County, Arkansas.

7. Defendant Robert Rhodes is now and has at all times relevant hereto been a resident and citizen of Jefferson County, Arkansas.

8. Defendant Gavilon Grain, LLC, is a foreign limited liability company conducting business in the State of Arkansas.

9. The events complained of herein occurred in Phillips County, Arkansas and Jefferson County, Arkansas.

10. Jurisdiction is proper in this Court.

11. Venue is proper in this Court pursuant to A.C.A. § 16-55-213 and A.C.A. § 16-60-101.

## II.   FACTS

12. Paragraphs one (1) through eleven (11) are incorporated herein by reference as if set forth word for word.

13. Plaintiffs, each of them, are Arkansas general partnerships are agricultural entities engaged in soybean production in the State of Arkansas.

14. Defendant Robert Rhodes is employed by Defendant Gavilon Grain, LLC.

15. Defendant Gavilon Grain, LLC is engaged in the business of purchasing grain from agricultural producers in several states, including the State of Arkansas.

16. Throughout the 2018 crop year, Gavilon Grain, LLC, issued multiple damage grading sheets stating the amount of dockage producers would be assessed based upon the quality of soybeans delivered.

17. Beginning in early 2018 and continuing through the soybean harvest of 2018, Gavilon Grain, LLC continued to issued damage grading sheets with increasing dollar amounts per damage amount for the purpose and intent of manipulating grain prices paid for crop from producers.

18. At the point in time during the 2018 soybean harvest, Plaintiff's representatives separately contacted Defendant Robert Rhodes and specifically asked if Gavilon Grain, LLC would pay Plaintiffs for their soybeans according to the previously issued damage grading sheets as opposed to the most recently distributed damage grading sheet.

19. Upon each of the above referenced inquiries, Defendant Robert Rhodes specifically told representatives from each Plaintiff that, "Yes, we will pay you for your soybeans according to the earlier damage grading sheets rather than the most recent."

20. The earlier issued grading sheets priced damage for bushel at a much lower rate the damage grading sheet issued during harvest.

21. At all times relevant hereto, Defendant was an agent and employee of Gavilon Grain, LLC and Plaintiffs reasonable relied on statements made by Defendant Robert Rhodes.

22. After delivery, Defendant Gavilon Grain, LLC paid Plaintiffs according to the most recent damage grading sheets, as opposed to the earlier issued grading sheet as stated by Defendant Robert Rhodes.

**III.    COUNT I – DECEIT**

23. Paragraphs one (1) through twenty-two (22) are incorporated herein by reference as if set forth word for word.

24. Defendants are liable to Plaintiffs for Deceit as follows:

a. Defendant Robert Rhodes falsely told Plaintiffs Defendant Gavilon Grain, LLC would pay them for their soybeans according to the previously issued soybean damage grading sheet; and

b. Defendant Robert Rhodes knew or reasonably should have known the statements he made to Plaintiffs were false; and

c. Defendant Robert Rhodes knew Plaintiffs would rely on his statements and deliver their soybeans to Defendant Gavilon Grain, LLC; and

d. Plaintiffs did rely on Defendant Robert Rhodes statements and did deliver their soybeans to Defendant Gavilon Grain, LLC; and

e. As a result of Defendant Robert Rhodes deceit, Plaintiffs sustained damages in the amounts of:

      1. K & A Farms:  $9,818.86;

      2. C & A Farms:  $24,151.67;

      3. Brocato & Unger Farms:  $48,447.67;

      4. Pharr Farms:  $113,000.00;

      5. Dayton Pharr Farms:  $115,000.00; and

      6. C & D Farms:  $10,769.70.

25. The acts of Defendant Robert Rhodes are imputed to Defendant Gavilon Grain, LLC through Respondeat Superior.

**IV.    COUNT II – NEGLIGENCE**

26. Paragraphs one (1) through twenty-five (25) are incorporated herein by reference as if set forth word for word.

27. Defendant Gavilon Grain, LLC is liable to Plaintiffs for negligence as follows:

a. Defendant Robert Rhodes was, at all times relevant hereto, an employee of Defendant Gavilon Grain, LLC; and

b. Defendant Gavilon Grain, LLC had a duty to supervise Defendant Robert Rhodes;

c. Defendant Gavilon Grain, LLC breached its duty by allowing Defendant Robert Rhodes to engage in dishonest and deceitful behavior towards its customers; and

d. As a result of the negligence of Gavilon Grain, LLC, Plaintiffs have sustained damages in the amount of:

    1. K & A Farms: $9,818.86;

    2. C & A Farms: $24,151.67;

    3. Brocato & Unger Farms: $48,447.67;

    4. Pharr Farms: $113,000.00;

    5. Dayton Pharr Farms: $115,000.00; and

    6. C & D Farms: $10,769.70.

28. Plaintiffs demand trial by jury.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs pray for judgment against Defendant Robert Rhodes and Defendant Gavilon Grain, LLC, for Deceit and Negligence in the amounts of:

    1. K & A Farms: $9,818.86;

    2. C & A Farms: $24,151.67;

    3. Brocato & Unger Farms: $48,447.67;

    4. Pharr Farms: $113,000.00;

    5. Dayton Pharr Farms: $115,000.00; and

    6. C & D Farms: $10,769.70.

In addition, Plaintiffs are entitled to punitive damages based on Defendant Rhodes

intentional conduct in the amount of $250,000.00, to be allocated pro rata; for their costs,

expenses, a reasonable attorney's fee and all other relief deemed appropriate by this Court.

Respectfully submitted,

KNAPP LAW FIRM

By:

Donald E. Knapp, Jr. (06067)
427 Cherry St.
P.O. Box 630
Helena, AR 72342
(870) 338-3100
Donald@TheKnappFirm.com

R.
P.O. Box 640
Helena, AR 72342







7016 1370 0002 3984 5925

Gavilon Grain, LLC
Capitol Corporate Services, Inc.
300 S Spring St., Ste 900
Little Rock AR 72201-2425

# GAVILON ⌒

# Gavilon Grain, LLC

| | |
|---|---|
| PINE BLUFF AR | **Our Number:** **6055232** |
| 509 ISLAND HARBOR MARINA RD | **PRICED** **Purchase** |
| PINE BLUFF, AR 71602 | Contract Date: 3/8/2018 |
| 870/419-7008 | |

| S | | | | Customer No. | 0000367045 |
|---|---|---|---|---|---|
| E | K & A SEALY FARMS | | | Payment Terms: | |
| L | P.O. BOX 96 | | | Broker: | |
| L | | | | Broker No.: | |
| E | | | | Delivery Terms: | DLV PINE BLUFF |
| R | MARVELL | AR | 72366 | | |

SELLER AGREES TO AND CONFIRMS THE SALE OF THE FOLLOWING DESCRIBED COMMODITIES TO GAVILON GRAIN, LLC (BUYER) SUBJECT TO THE TERMS AND CONDITIONS STATED ON THE FACE AND BACK THEREOF. FAILURE TO ADVISE GAVILON GRAIN, LLC IMMEDIATELY BY WIRE OF ANY DISCREPANCY, OBJECTION TO OR DISAGREEMENT WITH SUCH TERMS AND CONDITIONS SHALL BE AN ACCEPTANCE THEREOF.

**COMMODITY: #1YSB  YELLOW SOYBEANS**

**QUANTITY:   20,000.00      BU**

| | |
|---|---|
| WEIGHTS: | DESTINATION |
| GRADES: | DESTINATION |
| TRANSPORTATION: | TRUCK |
| REFERENCE: | |

| Status | Delivery Dates | Schedule Price | Futures Month | Futures Price | Basis Price | BU Priced |
|---|---|---|---|---|---|---|
| Priced | 9/1/2018 - 9/30/2018 | $10.27000 | Nov-18 | $10.40000 | -$0.13000 | 20,000.00 |

_Done_

**Total Contracted  BUSHELS**          **20,000.00**

| |
|---|
| Buyer's scale of discounts at time of delivery to apply. |
| Rules to apply: NGFA |

BUYER OBJECTS TO THE INCLUSION OF ANY DIFFERENT OR ADDITIONAL TERMS PROPOSED BY SELLER. BUYER'S SCHEDULE OF DISCOUNTS TO APPLY. SELLER GUARANTEES GRAIN U.S. GROWN. IF PRICE OF GRAIN IS ON A PREMIUM BASIS, CONTRACT TO BE PRICED OR SPREAD PRIOR TO THE LAST TRADING DAY PRECEDING THE FIRST DELIVERY DAY OF THE FUTURES CONTRACT.

Confirmation Acknowledged _K & A Sealy Farms_          Gavilon Grain, LLC

By: _Judy Bartlett_   3-15-18          _SC_   3-8-18

K & A SEALY FARMS          Date          SHANE YOUNG          **EXHIBIT** Date

**PLEASE SIGN ONE COPY AND RETURN TO ABOVE ADDRESS.**          **B**

## TERMS AND CONDITIONS

Except as modified or limited by the terms and conditions stated herein, the Contract shall be governed by and construed in accordance with the applicable rules and regulations of the exchange, board or association designated on the face hereof, or, if none is designated or Seller is not a member of said exchange, board, or association, then the applicable trade rules of the National Grain and Feed Association in effect on the date hereof, and, to the extent not inconsistent therewith, the applicable provisions of the Uniform Commercial Code.

Seller warrants to Buyer that all grain sold and delivered hereunder will be of good, sound, dry and merchantable quality in accordance with the grade specified herein; that it will have been grown in the Continental United States unless a non-United States grown clause has been made a part of this Contract and so stated on the face hereof; that it will not be adulterated or misbranded within the meaning of the Federal Food, Drug and Cosmetic Act, nor be a commodity which may not, under the provisions of Section 404 or 505 of the Act, be introduced into interstate commerce; that neither any such grain nor the shipment thereof will be in violation of or subject to penalty, seizure or lien under any other federal, state or local law, ordinance regulation quota or order, and all grain sold hereunder will be delivered to Buyer free and clear of any and all liens, encumbrances, security interests, claims and penalties of any kind and nature.

In the event that a party hereto (the "Defaulting Party") becomes insolvent, or suffers or consents to or applies for the appointment of a receiver, trustee, custodian or liquidator of itself or any of its property, or generally fails to pay its debts as they become due, or makes a general assignment for the benefit of creditors, or files a voluntary petition in bankruptcy, or seeks reorganization, in order to effect a plan or other arrangement with creditors or any other relief under the Bankruptcy Code, Title 11 of the United States Code, as amended or recodified from time to time, or under any state or federal law granting relief to debtors then the other party (the "Non-defaulting Party") may (i) immediately cancel this Contract and all other Contracts between the parties hereto, (ii) liquidate such cancelled Contracts in a commercially reasonable manner, and (iii) aggregate such liquidated amounts into a single liquidated settlement amount (the "Settlement Amount") due, which shall be due and payable two (2) business days after written notice by the Non-defaulting Party. In addition, the Non-defaulting Party may set-off any amounts owed by the Defaulting Party to the Non-defaulting Party under any other agreements between the parties against any Settlement Amount owed by the Non-defaulting Party to the Defaulting Party hereunder.

The parties agree that each of them is a forward contract merchant as set forth in 11 U.S.C. Section 101(25). The parties also agree that this Contract and any other commodity contract between the parties are all forward contracts as defined in 11 U.S.C. Section 101(25). The payments and transfers described herein shall constitute "Settlement Payments" or "Margin Payments" as set forth in 11 U.S.C. Sections 101(51A) and (38).

Each Party consents to the recording of all telephone conversations between its representative and the representatives of the other Party.

This Contract is made on the basis of freight rates in effect on the date hereof. Any increase in freight rates taking effect before the full performance of this Contract shall be for the account of Seller unless otherwise adjusted and agreed upon between the parties at the time of the affected shipment.

All shipments of grain hereunder shall be made by Seller to the place of delivery designated herein. Buyer may subsequently designate any reasonable alternate place of delivery to facilitate Seller's performance of this Contract but shall have no obligation to do so. Any increased shipping charges incurred under this provision shall be for Seller's account and any reductions in shipping charges shall be for Buyer's account; provided however, if the designated alternate delivery points are solely for Buyer's convenience, increase shipping charges shall be for Buyer's account.

Unless otherwise specified, each shipment hereunder will be applied to the oldest open contract between Buyer and Seller.

Buyer reserves the right to apply off-grade grain at market difference without first notifying Seller.

Buyer's performance hereunder, or any delay in such performance, including the acceptance of deliveries of grain on the date or dates specified, shall be excused where such failure to perform or delay is attributable to any cause or reason beyond Buyer's control, including without limitation lack of available storage space, equipment breakdown, labor trouble, governmental regulations, transportation difficulties, embargoes, civil disturbances, acts of God, or any other causes of the like or different character beyond Buyer's control.

This Contract is intended by the parties as a final expression of their agreement and is intended also as a complete and exclusive statement of the terms and conditions of their agreement. This Contract is limited to the terms and conditions stated herein, which terms and conditions shall prevail insofar as they might in any way conflict with any terms or conditions of Seller's confirmation.

There are hereby incorporated herein by reference the respective Equal Opportunity Clauses set forth in 41 C.F.R. para. 60-1.4 (a), 41 C.F.R. para. 60-250.4 and 41 C.F.R. para. 60-741.4 to extent the incorporation thereof is required by or necessary for compliance with applicable federal laws, regulations or orders. As used in such clauses, "contractor" shall mean the Seller hereunder. Unless otherwise exempt, this Purchase Order incorporates by reference the EEO Clause contained in 41 C.F.R. Sections 60-1.4, 60-741.5, and 60-250.5.

CONTROVERSIES: Controversies and/or other disagreements between Buyer and Seller arising under this Contract shall be settled by arbitration which shall be a condition precedent to any right of legal action that either Buyer or Seller may have against the other party. Any arbitration shall be in accordance with the rules of the National Grain and Feed Association [NGFA]. At the time notice of arbitration is served by either Buyer or Seller upon the other, (I) if either is a member of NGFA, the NGFA Arbitration Committee shall serve as the arbitrator; (ii) if neither is a member of the NGFA, the American Arbitration Association shall serve as the arbitrator.

# GAVILON ☰

# Gavilon Grain, LLC

PINE BLUFF AR
509 ISLAND HARBOR MARINA RD
PINE BLUFF, AR 71602
870/419-7008

| **Our Number:** | **6052410** |
| **FUTURE ONLY-HTA** | **Purchase** |
| Contract Date: | 1/30/2018 |

| | | |
|---|---|---|
| S E L L E R | K & A SEALY FARMS P.O. BOX 96 | Customer No. 0000367045 |
| | | Payment Terms: |
| | | Broker: |
| | | Broker No.: |
| | MARVELL AR 72366 | Delivery Terms: DLV PINE BLUFF |

SELLER AGREES TO AND CONFIRMS THE SALE OF THE FOLLOWING DESCRIBED COMMODITIES TO GAVILON GRAIN, LLC
(BUYER) SUBJECT TO THE TERMS AND CONDITIONS STATED ON THE FACE AND BACK THEREOF. FAILURE TO ADVISE
GAVILON GRAIN, LLC IMMEDIATELY BY WIRE OF ANY DISCREPANCY, OBJECTION TO OR DISAGREEMENT WITH SUCH
TERMS AND CONDITIONS SHALL BE AN ACCEPTANCE THEREOF.

**COMMODITY: #1YSB YELLOW SOYBEANS**

**QUANTITY: 25,000.00 BU**

| | |
|---|---|
| WEIGHTS: | DESTINATION |
| GRADES: | DESTINATION |
| TRANSPORTATION: | TRUCK |
| REFERENCE: | |
| MARKET REGION: | PINE BLUFF AR |

| Status | Delivery Dates | Schedule Price | Futures Month | Futures Price | Other Fees | BU Scheduled |
|---|---|---|---|---|---|---|
| Unpriced | 8/20/2018 - 9/14/2018 | $0.00000 | Nov-18 | $10.16000 | -$0.05000 | 25,000.00 |

| | |
|---|---|
| Buyer's scale of discounts at time of delivery to apply. Rules to apply: NGFA | **Total Contracted BUSHELS** **25,000.00** TO BE PRICED DURING AN ACTIVE SESSION OF THE APPLICABLE EXCHANGE (CBOT/KBOT/MGE) PRIOR TO THE SECOND TO LAST TRADING DAY PRECEDING THE FIRST NOTICE DAY |

FUTURES FIRST CONTRACT HTA FEE -.05
BASIS TO BE SET BEFORE DELIVERY

BUYER OBJECTS TO THE INCLUSION OF ANY DIFFERENT OR ADDITIONAL TERMS PROPOSED BY SELLER. BUYER'S SCHEDULE OF
DISCOUNTS TO APPLY. SELLER GUARANTEES GRAIN U.S. GROWN. IF PRICE OF GRAIN IS ON A PREMIUM BASIS, CONTRACT TO BE
PRICED OR SPREAD PRIOR TO THE LAST TRADING DAY PRECEDING THE FIRST DELIVERY DAY OF THE FUTURES CONTRACT.

Confirmation Acknowledged:

Gavilon Grain, LLC

| K & A SEALY FARMS | Date | SHANE YOUNG | 1-30-18 Date |

**PLEASE SIGN ONE COPY AND RETURN TO ABOVE ADDRESS.**

## TERMS AND CONDITIONS

Except as modified or limited by the terms and conditions stated herein, the Contract shall be governed by and construed in accordance with the applicable rules and regulations of the exchange, board or association designated on the face hereof, or, if none is designated or Seller is not a member of said exchange, board, or association, then the applicable trade rules of the National Grain and Feed Association in effect on the date hereof, and, to the extent not inconsistent therewith, the applicable provisions of the Uniform Commercial Code.

Seller warrants to Buyer that all grain sold and delivered hereunder will be of good, sound, dry and merchantable quality in accordance with the grade specified herein; that it will have been grown in the Continental United States unless a non-United States grown clause has been made a part of this Contract and so stated on the face hereof; that it will not be adulterated or misbranded within the meaning of the Federal Food, Drug and Cosmetic Act, nor be a commodity which may not, under the provisions of Section 404 or 505 of the Act, be introduced into interstate commerce; that neither any such grain nor the shipment thereof will be in violation of or subject to penalty, seizure or lien under any other federal, state or local law, ordinance regulation quota or order, and all grain sold hereunder will be delivered to Buyer free and clear of any and all liens, encumbrances, security interests, claims and penalties of any kind and nature.

In the event that a party hereto (the "Defaulting Party") becomes insolvent, or suffers or consents to or applies for the appointment of a receiver, trustee, custodian or liquidator of itself or any of its property, or generally fails to pay its debts as they become due, or makes a general assignment for the benefit of creditors, or files a voluntary petition in bankruptcy, or seeks reorganization, in order to effect a plan or other arrangement with creditors or any other relief under the Bankruptcy Code, Title 11 of the United States Code, as amended or recodified from time to time, or under any state or federal law granting relief to debtors then the other party (the "Non-defaulting Party") may (i) immediately cancel this Contract and all other Contracts between the parties hereto, (ii) liquidate such cancelled Contracts in a commercially reasonable manner, and (iii) aggregate such liquidated amounts into a single liquidated settlement amount (the "Settlement Amount") due, which shall be due and payable two (2) business days after written notice by the Non-defaulting Party. In addition, the Non-defaulting Party may set-off any amounts owed by the Defaulting Party to the Non-defaulting Party under any other agreements between the parties against any Settlement Amount owed by the Non-defaulting Party to the Defaulting Party hereunder.

The parties agree that each of them is a forward contract merchant as set forth in 11 U.S.C. Section 101(25). The parties also agree that this Contract and any other commodity contract between the parties are all forward contracts as defined in 11 U.S.C. Section 101(25). The payments and transfers described herein shall constitute "Settlement Payments" or "Margin Payments" as set forth in 11 U.S.C. Sections 101(51A) and (38).

Each Party consents to the recording of all telephone conversations between its representative and the representatives of the other Party.

This Contract is made on the basis of freight rates in effect on the date hereof. Any increase in freight rates taking effect before the full performance of this Contract shall be for the account of Seller unless otherwise adjusted and agreed upon between the parties at the time of the affected shipment.

All shipments of grain hereunder shall be made by Seller to the place of delivery designated herein. Buyer may subsequently designate any reasonable alternate place of delivery to facilitate Seller's performance of this Contract but shall have no obligation to do so. Any increased shipping charges incurred under this provision shall be for Seller's account and any reductions in shipping charges shall be for Buyer's account; provided however, if the designated alternate delivery points are solely for Buyer's convenience, increase shipping charges shall be for Buyer's account.

Unless otherwise specified, each shipment hereunder will be applied to the oldest open contract between Buyer and Seller.

Buyer reserves the right to apply off-grade grain at market difference without first notifying Seller.

Buyer's performance hereunder, or any delay in such performance, including the acceptance of deliveries of grain on the date or dates specified, shall be excused where such failure to perform or delay is attributable to any cause or reason beyond Buyer's control, including without limitation lack of available storage space, equipment breakdown, labor trouble, governmental regulations, transportation difficulties, embargoes, civil disturbances, acts of God, or any other causes of the like or different character beyond Buyer's control.

This Contract is intended by the parties as a final expression of their agreement and is intended also as a complete and exclusive statement of the terms and conditions of their agreement. This Contract is limited to the terms and conditions stated herein, which terms and conditions shall prevail insofar as they might in any way conflict with any terms or conditions of Seller's confirmation.

There are hereby incorporated herein by reference the respective Equal Opportunity Clauses set forth in 41 C.F.R. para. 60-1.4 (a), 41 C.F.R. para. 60-250.4 and 41 C.F.R. para. 60-741.4 to extent the incorporation thereof is required by or necessary for compliance with applicable federal laws, regulations or orders. As used in such clauses, "contractor" shall mean the Seller hereunder. Unless otherwise exempt, this Purchase Order incorporates by reference the EEO Clause contained in 41 C.F.R. Sections 60-1.4, 60-741.5, and 60-250.5.

CONTROVERSIES: Controversies and/or other disagreements between Buyer and Seller arising under this Contract shall be settled by arbitration which shall be a condition precedent to any right of legal action that either Buyer or Seller may have against the other party. Any arbitration shall be in accordance with the rules of the National Grain and Feed Association [NGFA]. At the time notice of arbitration is served by either Buyer or Seller upon the other, (I) if either is a member of NGFA, the NGFA Arbitration Committee shall serve as the arbitrator; (ii) if neither is a member of the NGFA, the American Arbitration Association shall serve as the arbitrator.

# GAVILON ☲   Gavilon Grain, LLC

| | |
|---|---|
| PINE BLUFF AR | **Our Number:** 6052416 |
| 509 ISLAND HARBOR MARINA RD | **FUTURE ONLY-HTA** **Purchase** |
| PINE BLUFF, AR 71602 | Contract Date: 2/12/2018 |
| 870/419-7008 | |

| | |
|---|---|
| S E L L E R | Customer No. 0000367045 |
| K & A SEALY FARMS | Payment Terms: |
| P.O. BOX 96 | Broker: |
| | Broker No.: |
| MARVELL        AR      72366 | Delivery Terms: DLV PINE BLUFF |

SELLER AGREES TO AND CONFIRMS THE SALE OF THE FOLLOWING DESCRIBED COMMODITIES TO GAVILON GRAIN, LLC (BUYER) SUBJECT TO THE TERMS AND CONDITIONS STATED ON THE FACE AND BACK THEREOF. FAILURE TO ADVISE GAVILON GRAIN, LLC IMMEDIATELY BY WIRE OF ANY DISCREPANCY, OBJECTION TO OR DISAGREEMENT WITH SUCH TERMS AND CONDITIONS SHALL BE AN ACCEPTANCE THEREOF.

| | |
|---|---|
| **COMMODITY: #1YSB  YELLOW SOYBEANS** | WEIGHTS: DESTINATION |
| | GRADES: DESTINATION |
| **QUANTITY:  20,000.00        BU** | TRANSPORTATION: TRUCK |
| | REFERENCE: |
| | MARKET REGION: PINE BLUFF AR |

| Status | Delivery Dates | Schedule Price | Futures Month | Futures Price | Other Fees | BU Scheduled |
|---|---|---|---|---|---|---|
| Unpriced | 9/1/2018 - 9/30/2018 | $0.00000 | Nov-18 | $10.10000 | -$0.03000 | 20,000.00 |

Done

| | |
|---|---|
| Buyer's scale of discounts at time of delivery to apply. | **Total Contracted  BUSHELS        20,000.00** |
| Rules to apply: NGFA | TO BE PRICED DURING AN ACTIVE SESSION OF THE APPLICABLE EXCHANGE (CBOT/KBOT/MGE) PRIOR TO THE SECOND TO LAST TRADING DAY PRECEDING THE FIRST NOTICE DAY |

HTA FEE -.03
SET BASIS BEFORE DLV

BUYER OBJECTS TO THE INCLUSION OF ANY DIFFERENT OR ADDITIONAL TERMS PROPOSED BY SELLER. BUYER'S SCHEDULE OF DISCOUNTS TO APPLY. SELLER GUARANTEES GRAIN U.S. GROWN. IF PRICE OF GRAIN IS ON A PREMIUM BASIS, CONTRACT TO BE PRICED OR SPREAD PRIOR TO THE LAST TRADING DAY PRECEDING THE FIRST DELIVERY DAY OF THE FUTURES CONTRACT.

| | |
|---|---|
| Confirmation Acknowledged: | Gavilon Grain, LLC |
| K & A SEALY FARMS          Date | SHANE YOUNG          2-12-18  Date |

**PLEASE SIGN ONE COPY AND RETURN TO ABOVE ADDRESS.**

## TERMS AND CONDITIONS

Except as modified or limited by the terms and conditions stated herein, the Contract shall be governed by and construed in accordance with the applicable rules and regulations of the exchange, board or association designated on the face hereof, or, if none is designated or Seller is not a member of said exchange, board, or association, then the applicable trade rules of the National Grain and Feed Association in effect on the date hereof, and, to the extent not inconsistent therewith, the applicable provisions of the Uniform Commercial Code.

Seller warrants to Buyer that all grain sold and delivered hereunder will be of good, sound, dry and merchantable quality in accordance with the grade specified herein; that it will have been grown in the Continental United States unless a non-United States grown clause has been made a part of this Contract and so stated on the face hereof; that it will not be adulterated or misbranded within the meaning of the Federal Food, Drug and Cosmetic Act, nor be a commodity which may not, under the provisions of Section 404 or 505 of the Act, be introduced into interstate commerce; that neither any such grain nor the shipment thereof will be in violation of or subject to penalty, seizure or lien under any other federal, state or local law, ordinance regulation quota or order, and all grain sold hereunder will be delivered to Buyer free and clear of any and all liens, encumbrances, security interests, claims and penalties of any kind and nature.

In the event that a party hereto (the "Defaulting Party") becomes insolvent, or suffers or consents to or applies for the appointment of a receiver, trustee, custodian or liquidator of itself or any of its property, or generally fails to pay its debts as they become due, or makes a general assignment for the benefit of creditors, or files a voluntary petition in bankruptcy, or seeks reorganization, in order to effect a plan or other arrangement with creditors or any other relief under the Bankruptcy Code, Title 11 of the United States Code, as amended or recodified from time to time, or under any state or federal law granting relief to debtors then the other party (the "Non-defaulting Party") may (i) immediately cancel this Contract and all other Contracts between the parties hereto, (ii) liquidate such cancelled Contracts in a commercially reasonable manner, and (iii) aggregate such liquidated amounts into a single liquidated settlement amount (the "Settlement Amount") due, which shall be due and payable two (2) business days after written notice by the Non-defaulting Party. In addition, the Non-defaulting Party may set-off any amounts owed by the Defaulting Party to the Non-defaulting Party under any other agreements between the parties against any Settlement Amount owed by the Non-defaulting Party to the Defaulting Party hereunder.

The parties agree that each of them is a forward contract merchant as set forth in 11 U.S.C. Section 101(25). The parties also agree that this Contract and any other commodity contract between the parties are all forward contracts as defined in 11 U.S.C. Section 101(25). The payments and transfers described herein shall constitute "Settlement Payments" or "Margin Payments" as set forth in 11 U.S.C. Sections 101(51A) and (38).

Each Party consents to the recording of all telephone conversations between its representative and the representatives of the other Party.

This Contract is made on the basis of freight rates in effect on the date hereof. Any increase in freight rates taking effect before the full performance of this Contract shall be for the account of Seller unless otherwise adjusted and agreed upon between the parties at the time of the affected shipment.

All shipments of grain hereunder shall be made by Seller to the place of delivery designated herein. Buyer may subsequently designate any reasonable alternate place of delivery to facilitate Seller's performance of this Contract but shall have no obligation to do so. Any increased shipping charges incurred under this provision shall be for Seller's account and any reductions in shipping charges shall be for Buyer's account; provided however, if the designated alternate delivery points are solely for Buyer's convenience, increase shipping charges shall be for Buyer's account.

Unless otherwise specified, each shipment hereunder will be applied to the oldest open contract between Buyer and Seller.

Buyer reserves the right to apply off-grade grain at market difference without first notifying Seller.

Buyer's performance hereunder, or any delay in such performance, including the acceptance of deliveries of grain on the date or dates specified, shall be excused where such failure to perform or delay is attributable to any cause or reason beyond Buyer's control, including without limitation lack of available storage space, equipment breakdown, labor trouble, governmental regulations, transportation difficulties, embargoes, civil disturbances, acts of God, or any other causes of the like or different character beyond Buyer's control.

This Contract is intended by the parties as a final expression of their agreement and is intended also as a complete and exclusive statement of the terms and conditions of their agreement. This Contract is limited to the terms and conditions stated herein, which terms and conditions shall prevail insofar as they might in any way conflict with any terms or conditions of Seller's confirmation.

There are hereby incorporated herein by reference the respective Equal Opportunity Clauses set forth in 41 C.F.R. para. 60-1.4 (a), 41 C.F.R. para. 60-250.4 and 41 C.F.R. para. 60-741.4 to extent the incorporation thereof is required by or necessary for compliance with applicable federal laws, regulations or orders. As used in such clauses, "contractor" shall mean the Seller hereunder. Unless otherwise exempt, this Purchase Order incorporates by reference the EEO Clause contained in 41 C.F.R. Sections 60-1.4, 60-741.5, and 60-250.5.

CONTROVERSIES: Controversies and/or other disagreements between Buyer and Seller arising under this Contract shall be settled by arbitration which shall be a condition precedent to any right of legal action that either Buyer or Seller may have against the other party. Any arbitration shall be in accordance with the rules of the National Grain and Feed Association [NGFA]. At the time notice of arbitration is served by either Buyer or Seller upon the other, (I) if either is a member of NGFA, the NGFA Arbitration Committee shall serve as the arbitrator; (ii) if neither is a member of the NGFA, the American Arbitration Association shall serve as the arbitrator.

# GAVILON ⮹

# Gavilon Grain, LLC

PINE BLUFF AR
509 ISLAND HARBOR MARINA RD
PINE BLUFF, AR 71602
870/419-7008

**Our Number:** **6052413**

**FUTURE ONLY-HTA** **Purchase**

**Contract Date:** 2/9/2018

| | | | |
|---|---|---|---|
| S | K & A SEALY FARMS | Customer No. | 0000367045 |
| E | P.O. BOX 96 | Payment Terms: | |
| L | | Broker: | |
| L | | Broker No.: | |
| E | | | |
| R | MARVELL     AR     72366 | Delivery Terms: | DLV PINE BLUFF |

SELLER AGREES TO AND CONFIRMS THE SALE OF THE FOLLOWING DESCRIBED COMMODITIES TO GAVILON GRAIN, LLC
(BUYER) SUBJECT TO THE TERMS AND CONDITIONS STATED ON THE FACE AND BACK THEREOF. FAILURE TO ADVISE
GAVILON GRAIN, LLC IMMEDIATELY BY WIRE OF ANY DISCREPANCY, OBJECTION TO OR DISAGREEMENT WITH SUCH
TERMS AND CONDITIONS SHALL BE AN ACCEPTANCE THEREOF.

COMMODITY: #1YSB  YELLOW SOYBEANS

**QUANTITY:  5,000.00       BU**

WEIGHTS:                                      DESTINATION
GRADES:                                        DESTINATION
TRANSPORTATION:                        TRUCK
REFERENCE:
MARKET REGION:          PINE BLUFF AR

| Status | Delivery Dates | Schedule Price | Futures Month | Futures Price | Other Fees | BU Scheduled |
|---|---|---|---|---|---|---|
| Unpriced | 9/1/2018 - 9/30/2018 | $0.00000 | Nov-18 | $10.1000 | -$0.03000 | 5,000.00 |

*Done*

| | |
|---|---|
| Buyer's scale of discounts at time of delivery to apply. | **Total Contracted BUSHELS** **5,000.00** |
| Rules to apply: NGFA | **TO BE PRICED DURING AN ACTIVE SESSION OF THE APPLICABLE EXCHANGE (CBOT/KBOT/MGE) PRIOR TO THE SECOND TO LAST TRADING DAY PRECEDING THE FIRST NOTICE DAY** |

HTA FEE -.03
SET BASIS BEFORE DLV

BUYER OBJECTS TO THE INCLUSION OF ANY DIFFERENT OR ADDITIONAL TERMS PROPOSED BY SELLER. BUYER'S SCHEDULE OF
DISCOUNTS TO APPLY. SELLER GUARANTEES GRAIN U.S. GROWN. IF PRICE OF GRAIN IS ON A PREMIUM BASIS, CONTRACT TO BE
PRICED OR SPREAD PRIOR TO THE LAST TRADING DAY PRECEDING THE FIRST DELIVERY DAY OF THE FUTURES CONTRACT.

Confirmation Acknowledged:                                        Gavilon Grain, LLC

_____          _____          _____          2-09-18
          K & A SEALY FARMS          Date                    SHANE YOUNG                    Date
**PLEASE SIGN ONE COPY AND RETURN TO ABOVE ADDRESS.**

## TERMS AND CONDITIONS

Except as modified or limited by the terms and conditions stated herein, the Contract shall be governed by and construed in accordance with the applicable rules and regulations of the exchange, board or association designated on the face hereof, or, if none is designated or Seller is not a member of said exchange, board, or association, then the applicable trade rules of the National Grain and Feed Association in effect on the date hereof, and, to the extent not inconsistent therewith, the applicable provisions of the Uniform Commercial Code.

Seller warrants to Buyer that all grain sold and delivered hereunder will be of good, sound, dry and merchantable quality in accordance with the grade specified herein; that it will have been grown in the Continental United States unless a non-United States grown clause has been made a part of this Contract and so stated on the face hereof; that it will not be adulterated or misbranded within the meaning of the Federal Food, Drug and Cosmetic Act, nor be a commodity which may not, under the provisions of Section 404 or 505 of the Act, be introduced into interstate commerce; that neither any such grain nor the shipment thereof will be in violation of or subject to penalty, seizure or lien under any other federal, state or local law, ordinance regulation quota or order, and all grain sold hereunder will be delivered to Buyer free and clear of any and all liens, encumbrances, security interests, claims and penalties of any kind and nature.

In the event that a party hereto (the "Defaulting Party") becomes insolvent, or suffers or consents to or applies for the appointment of a receiver, trustee, custodian or liquidator of itself or any of its property, or generally fails to pay its debts as they become due, or makes a general assignment for the benefit of creditors, or files a voluntary petition in bankruptcy, or seeks reorganization, in order to effect a plan or other arrangement with creditors or any other relief under the Bankruptcy Code, Title 11 of the United States Code, as amended or recodified from time to time, or under any state or federal law granting relief to debtors then the other party (the "Non-defaulting Party") may (i) immediately cancel this Contract and all other Contracts between the parties hereto, (ii) liquidate such cancelled Contracts in a commercially reasonable manner, and (iii) aggregate such liquidated amounts into a single liquidated settlement amount (the "Settlement Amount") due, which shall be due and payable two (2) business days after written notice by the Non-defaulting Party. In addition, the Non-defaulting Party may set-off any amounts owed by the Defaulting Party to the Non-defaulting Party under any other agreements between the parties against any Settlement Amount owed by the Non-defaulting Party to the Defaulting Party hereunder.

The parties agree that each of them is a forward contract merchant as set forth in 11 U.S.C. Section 101(25). The parties also agree that this Contract and any other commodity contract between the parties are all forward contracts as defined in 11 U.S.C. Section 101(25). The payments and transfers described herein shall constitute "Settlement Payments" or "Margin Payments" as set forth in 11 U.S.C. Sections 101(51A) and (38).

Each Party consents to the recording of all telephone conversations between its representative and the representatives of the other Party.

This Contract is made on the basis of freight rates in effect on the date hereof. Any increase in freight rates taking effect before the full performance of this Contract shall be for the account of Seller unless otherwise adjusted and agreed upon between the parties at the time of the affected shipment.

All shipments of grain hereunder shall be made by Seller to the place of delivery designated herein. Buyer may subsequently designate any reasonable alternate place of delivery to facilitate Seller's performance of this Contract but shall have no obligation to do so. Any increased shipping charges incurred under this provision shall be for Seller's account and any reductions in shipping charges shall be for Buyer's account; provided however, if the designated alternate delivery points are solely for Buyer's convenience, increase shipping charges shall be for Buyer's account.

Unless otherwise specified, each shipment hereunder will be applied to the oldest open contract between Buyer and Seller.

Buyer reserves the right to apply off-grade grain at market difference without first notifying Seller.

Buyer's performance hereunder, or any delay in such performance, including the acceptance of deliveries of grain on the date or dates specified, shall be excused where such failure to perform or delay is attributable to any cause or reason beyond Buyer's control, including without limitation lack of available storage space, equipment breakdown, labor trouble, governmental regulations, transportation difficulties, embargoes, civil disturbances, acts of God, or any other causes of the like or different character beyond Buyer's control.

This Contract is intended by the parties as a final expression of their agreement and is intended also as a complete and exclusive statement of the terms and conditions of their agreement. This Contract is limited to the terms and conditions stated herein, which terms and conditions shall prevail insofar as they might in any way conflict with any terms or conditions of Seller's confirmation.

There are hereby incorporated herein by reference the respective Equal Opportunity Clauses set forth in 41 C.F.R. para. 60-1.4 (a), 41 C.F.R. para. 60-250.4 and 41 C.F.R. para. 60-741.4 to extent the incorporation thereof is required by or necessary for compliance with applicable federal laws, regulations or orders. As used in such clauses, "contractor" shall mean the Seller hereunder. Unless otherwise exempt, this Purchase Order incorporates by reference the EEO Clause contained in 41 C.F.R. Sections 60-1.4, 60-741.5, and 60-250.5.

CONTROVERSIES: Controversies and/or other disagreements between Buyer and Seller arising under this Contract shall be settled by arbitration which shall be a condition precedent to any right of legal action that either Buyer or Seller may have against the other party. Any arbitration shall be in accordance with the rules of the National Grain and Feed Association [NGFA]. At the time notice of arbitration is served by either Buyer or Seller upon the other, (I) if either is a member of NGFA, the NGFA Arbitration Committee shall serve as the arbitrator; (ii) if neither is a member of the NGFA, the American Arbitration Association shall serve as the arbitrator.

# GAVILON ⦿     Gavilon Grain, LLC

PINE BLUFF AR
509 ISLAND HARBOR MARINA RD
PINE BLUFF, AR 71602
870/419-7008

**CONFIRMATION OF PRICING
AND/OR ORIGINAL CONTRACT
AMENDMENT**

| | |
|---|---|
| **Our Number:** | **6052413** |
| **FUTURE ONLY-HTA** | **Purchase** |
| Contract Date: | 2/9/2018 |
| Customer No. | 0000367045 |

S
E   K & A SEALY FARMS
L   P.O. BOX 96
L
E
R   MARVELL     AR   72366

Broker:
Broker No.:
Delivery Terms:   DLV PINE BLUFF

THIS CONFIRMATION COVERS OUR UNDERSTANDING OF PRICING, AND/OR, OF AMENDMENT(S) IN PRIOR STIPULATIONS, TERMS, OR CONDITIONS OF THE CONTRACT SO DESIGNATED. THE NEW TERMS ARE TO BE CONSIDERED AS PART OF THE ORIGINAL CONTRACT AND ARE MADE WITH THE BEST INTERESTS OF BOTH PARTIES IN MIND. FAILURE TO ADVISE GAVILON GRAIN, LLC IMMEDIATELY BY WIRE OF ANY DISCREPANCY, OBJECTION TO OR DISAGREEMENT WITH SUCH TERMS AND CONDITIONS SHALL BE AN ACCEPTANCE THEREOF.

COMMODITY: #1YSB  YELLOW SOYBEANS
TOTAL QUANTITY:            5,000.00
PRICED QUANTITY:          5,000.00
UNPRICED QUANTITY:       0.00

WEIGHTS:                          DESTINATION
GRADES:                           DESTINATION
TRANSPORTATION:            TRUCK
REFERENCE:

| Status | Pricing Date | Delivery Dates | Schedule Price | Futures Month | Futures Price | Basis Price | BU Unpriced | BU Priced |
|---|---|---|---|---|---|---|---|---|
| Priced | 10/2/2018 | 9/1/2018 - 9/30/2018 | $9.42000 | Nov-18 | $10.10000 | -$0.68000 | 0.00 | 5,000.00 |

DONE

| | |
|---|---|
| Buyer's scale of discounts at time of delivery to apply. Rules to apply: NGFA | **Total Priced BUSHELS**            **5,000.00** |

HTA FEE -.03
SET BASIS BEFORE DLV

BUYER OBJECTS TO THE INCLUSION OF ANY DIFFERENT OR ADDITIONAL TERMS PROPOSED BY SELLER.

Confirmation Acknowledged:                              Gavilon Grain, LLC

*K&A Sealy Farms*

Signer2  By: *Andy Bartlett*   Date2 10-8-18      Signer1 *[signature]*   Date1 10/2/18
K & A SEALY FARMS                                        ROBERT RHODES
                  **PLEASE SIGN ONE COPY AND RETURN TO ABOVE ADDRESS.**

# TERMS AND CONDITIONS

Except as modified or limited by the terms and conditions stated herein, the Contract shall be governed by and construed in accordance with the applicable rules and regulations of the exchange, board or association designated on the face hereof, or, if none is designated or Seller is not a member of said exchange, board, or association, then the applicable trade rules of the National Grain and Feed Association in effect on the date hereof, and, to the extent not inconsistent therewith, the applicable provisions of the Uniform Commercial Code.

Seller warrants to Buyer that all grain sold and delivered hereunder will be of good, sound, dry and merchantable quality in accordance with the grade specified herein; that it will have been grown in the Continental United States unless a non-United States grown clause has been made a part of this Contract and so stated on the face hereof; that it will not be adulterated or misbranded within the meaning of the Federal Food, Drug and Cosmetic Act, nor be a commodity which may not, under the provisions of Section 404 or 505 of the Act, be introduced into interstate commerce; that neither any such grain nor the shipment thereof will be in violation of or subject to penalty, seizure or lien under any other federal, state or local law, ordinance regulation quota or order, and all grain sold hereunder will be delivered to Buyer free and clear of any and all liens, encumbrances, security interests, claims and penalties of any kind and nature.

In the event that a party hereto (the "Defaulting Party") becomes insolvent, or suffers or consents to or applies for the appointment of a receiver, trustee, custodian or liquidator of itself or any of its property, or generally fails to pay its debts as they become due, or makes a general assignment for the benefit of creditors, or files a voluntary petition in bankruptcy, or seeks reorganization, in order to effect a plan or other arrangement with creditors or any other relief under the Bankruptcy Code, Title 11 of the United States Code, as amended or recodified from time to time, or under any state or federal law granting relief to debtors then the other party (the "Non-defaulting Party") may (i) immediately cancel this Contract and all other Contracts between the parties hereto, (ii) liquidate such cancelled Contracts in a commercially reasonable manner, and (iii) aggregate such liquidated amounts into a single liquidated settlement amount (the "Settlement Amount") due, which shall be due and payable two (2) business days after written notice by the Non-defaulting Party. In addition, the Non-defaulting Party may set-off any amounts owed by the Defaulting Party to the Non-defaulting Party under any other agreements between the parties against any Settlement Amount owed by the Non-defaulting Party to the Defaulting Party hereunder.

The parties agree that each of them is a forward contract merchant as set forth in 11 U.S.C. Section 101(25). The parties also agree that this Contract and any other commodity contract between the parties are all forward contracts as defined in 11 U.S.C. Section 101(25). The payments and transfers described herein shall constitute "Settlement Payments" or "Margin Payments" as set forth in 11 U.S.C. Sections 101(51A) and (38).

Each Party consents to the recording of all telephone conversations between its representative and the representatives of the other Party.

This Contract is made on the basis of freight rates in effect on the date hereof. Any increase in freight rates taking effect before the full performance of this Contract shall be for the account of Seller unless otherwise adjusted and agreed upon between the parties at the time of the affected shipment.

All shipments of grain hereunder shall be made by Seller to the place of delivery designated herein. Buyer may subsequently designate any reasonable alternate place of delivery to facilitate Seller's performance of this Contract but shall have no obligation to do so. Any increased shipping charges incurred under this provision shall be for Seller's account and any reductions in shipping charges shall be for Buyer's account; provided however, if the designated alternate delivery points are solely for Buyer's convenience, increase shipping charges shall be for Buyer's account.

Unless otherwise specified, each shipment hereunder will be applied to the oldest open contract between Buyer and Seller.

Buyer reserves the right to apply off-grade grain at market difference without first notifying Seller.

Buyer's performance hereunder, or any delay in such performance, including the acceptance of deliveries of grain on the date or dates specified, shall be excused where such failure to perform or delay is attributable to any cause or reason beyond Buyer's control, including without limitation lack of available storage space, equipment breakdown, labor trouble, governmental regulations, transportation difficulties, embargoes, civil disturbances, acts of God, or any other causes of the like or different character beyond Buyer's control.

This Contract is intended by the parties as a final expression of their agreement and is intended also as a complete and exclusive statement of the terms and conditions of their agreement. This Contract is limited to the terms and conditions stated herein, which terms and conditions shall prevail insofar as they might in any way conflict with any terms or conditions of Seller's confirmation.

There are hereby incorporated herein by reference the respective Equal Opportunity Clauses set forth in 41 C.F.R. para. 60-1.4 (a), 41 C.F.R. para. 60-250.4 and 41 C.F.R. para. 60-741.4 to extent the incorporation thereof is required by or necessary for compliance with applicable federal laws, regulations or orders. As used in such clauses, "contractor" shall mean the Seller hereunder. Unless otherwise exempt, this Purchase Order incorporates by reference the EEO Clause contained in 41 C.F.R. Sections 60-1.4, 60-741.5, and 60-250.5.

CONTROVERSIES: Controversies and/or other disagreements between Buyer and Seller arising under this Contract shall be settled by arbitration which shall be a condition precedent to any right of legal action that either Buyer or Seller may have against the other party. Any arbitration shall be in accordance with the rules of the National Grain and Feed Association [NGFA]. At the time notice of arbitration is served by either Buyer or Seller upon the other, (I) if either is a member of NGFA, the NGFA Arbitration Committee shall serve as the arbitrator; (ii) if neither is a member of the NGFA, the American Arbitration Association shall serve as the arbitrator.

# GAVILON ⟲

# Gavilon Grain, LLC

PINE BLUFF AR
509 ISLAND HARBOR MARINA RD
PINE BLUFF, AR 71602
870/419-7008

**CONFIRMATION OF PRICING
AND/OR ORIGINAL CONTRACT
AMENDMENT**

| | |
|---|---|
| **Our Number:** | **6052416** |
| **FUTURE ONLY-HTA** | **Purchase** |
| Contract Date: | 2/12/2018 |
| Customer No. | 0000367045 |

S
E   K & A SEALY FARMS
L   P.O. BOX 96
E
R   MARVELL        AR    72366

Broker:
Broker No.:
Delivery Terms:     DLV PINE BLUFF

THIS CONFIRMATION COVERS OUR UNDERSTANDING OF PRICING, AND/OR, OF AMENDMENT(S) IN PRIOR STIPULATIONS, TERMS, OR CONDITIONS OF THE CONTRACT SO DESIGNATED. THE NEW TERMS ARE TO BE CONSIDERED AS PART OF THE ORIGINAL CONTRACT AND ARE MADE WITH THE BEST INTERESTS OF BOTH PARTIES IN MIND. FAILURE TO ADVISE GAVILON GRAIN, LLC IMMEDIATELY BY WIRE OF ANY DISCREPANCY, OBJECTION TO OR DISAGREEMENT WITH SUCH TERMS AND CONDITIONS SHALL BE AN ACCEPTANCE THEREOF.

**COMMODITY: #1YSB  YELLOW SOYBEANS**
**TOTAL QUANTITY:**          20,000.00
**PRICED QUANTITY:**         20,000.00
**UNPRICED QUANTITY:**            0.00

WEIGHTS:                    DESTINATION
GRADES:                     DESTINATION
TRANSPORTATION:                   TRUCK
REFERENCE:

| Status | Pricing Date | Delivery Dates | Schedule Price | Futures Month | Futures Price | Basis Price | BU Unpriced | BU Priced |
|---|---|---|---|---|---|---|---|---|
| Priced | 10/3/2018 | 9/1/2018 - 9/30/2018 | $9.42000 | Nov-18 | $10.10000 | -$0.68000 | 0.00 | 20,000.00 |

Buyer's scale of discounts at time of delivery to apply.
Rules to apply: NGFA

**Total Priced BUSHELS**          **20,000.00**

HTA FEE -.03
SET BASIS BEFORE DLV

BUYER OBJECTS TO THE INCLUSION OF ANY DIFFERENT OR ADDITIONAL TERMS PROPOSED BY SELLER.

Confirmation Acknowledged:                    Gavilon Grain, LLC

Signer2  By: *Judy Bartlett*   Date2 10-4-18          Signer1 *Robert Rhodes*   Date1 10/3/18
         K & A SEALY FARMS                                     ROBERT RHODES
**PLEASE SIGN ONE COPY AND RETURN TO ABOVE ADDRESS.**

## TERMS AND CONDITIONS

Except as modified or limited by the terms and conditions stated herein, the Contract shall be governed by and construed in accordance with the applicable rules and regulations of the exchange, board or association designated on the face hereof, or, if none is designated or Seller is not a member of said exchange, board, or association, then the applicable trade rules of the National Grain and Feed Association in effect on the date hereof, and, to the extent not inconsistent therewith, the applicable provisions of the Uniform Commercial Code.

Seller warrants to Buyer that all grain sold and delivered hereunder will be of good, sound, dry and merchantable quality in accordance with the grade specified herein; that it will have been grown in the Continental United States unless a non-United States grown clause has been made a part of this Contract and so stated on the face hereof; that it will not be adulterated or misbranded within the meaning of the Federal Food, Drug and Cosmetic Act, nor be a commodity which may not, under the provisions of Section 404 or 505 of the Act, be introduced into interstate commerce; that neither any such grain nor the shipment thereof will be in violation of or subject to penalty, seizure or lien under any other federal, state or local law, ordinance regulation quota or order, and all grain sold hereunder will be delivered to Buyer free and clear of any and all liens, encumbrances, security interests, claims and penalties of any kind and nature.

In the event that a party hereto (the "Defaulting Party") becomes insolvent, or suffers or consents to or applies for the appointment of a receiver, trustee, custodian or liquidator of itself or any of its property, or generally fails to pay its debts as they become due, or makes a general assignment for the benefit of creditors, or files a voluntary petition in bankruptcy, or seeks reorganization, in order to effect a plan or other arrangement with creditors or any other relief under the Bankruptcy Code, Title 11 of the United States Code, as amended or recodified from time to time, or under any state or federal law granting relief to debtors then the other party (the "Non-defaulting Party") may (i) immediately cancel this Contract and all other Contracts between the parties hereto, (ii) liquidate such cancelled Contracts in a commercially reasonable manner, and (iii) aggregate such liquidated amounts into a single liquidated settlement amount (the "Settlement Amount") due, which shall be due and payable two (2) business days after written notice by the Non-defaulting Party. In addition, the Non-defaulting Party may set-off any amounts owed by the Defaulting Party to the Non-defaulting Party under any other agreements between the parties against any Settlement Amount owed by the Non-defaulting Party to the Defaulting Party hereunder.

The parties agree that each of them is a forward contract merchant as set forth in 11 U.S.C. Section 101(25). The parties also agree that this Contract and any other commodity contract between the parties are all forward contracts as defined in 11 U.S.C. Section 101(25). The payments and transfers described herein shall constitute "Settlement Payments" or "Margin Payments" as set forth in 11 U.S.C. Sections 101(51A) and (38).

Each Party consents to the recording of all telephone conversations between its representative and the representatives of the other Party.

This Contract is made on the basis of freight rates in effect on the date hereof. Any increase in freight rates taking effect before the full performance of this Contract shall be for the account of Seller unless otherwise adjusted and agreed upon between the parties at the time of the affected shipment.

All shipments of grain hereunder shall be made by Seller to the place of delivery designated herein. Buyer may subsequently designate any reasonable alternate place of delivery to facilitate Seller's performance of this Contract but shall have no obligation to do so. Any increased shipping charges incurred under this provision shall be for Seller's account and any reductions in shipping charges shall be for Buyer's account; provided however, if the designated alternate delivery points are solely for Buyer's convenience, increase shipping charges shall be for Buyer's account.

Unless otherwise specified, each shipment hereunder will be applied to the oldest open contract between Buyer and Seller.

Buyer reserves the right to apply off-grade grain at market difference without first notifying Seller.

Buyer's performance hereunder, or any delay in such performance, including the acceptance of deliveries of grain on the date or dates specified, shall be excused where such failure to perform or delay is attributable to any cause or reason beyond Buyer's control, including without limitation lack of available storage space, equipment breakdown, labor trouble, governmental regulations, transportation difficulties, embargoes, civil disturbances, acts of God, or any other causes of the like or different character beyond Buyer's control.

This Contract is intended by the parties as a final expression of their agreement and is intended also as a complete and exclusive statement of the terms and conditions of their agreement. This Contract is limited to the terms and conditions stated herein, which terms and conditions shall prevail insofar as they might in any way conflict with any terms or conditions of Seller's confirmation.

There are hereby incorporated herein by reference the respective Equal Opportunity Clauses set forth in 41 C.F.R. para. 60-1.4 (a), 41 C.F.R. para. 60-250.4 and 41 C.F.R. para. 60-741.4 to extent the incorporation thereof is required by or necessary for compliance with applicable federal laws, regulations or orders. As used in such clauses, "contractor" shall mean the Seller hereunder. Unless otherwise exempt, this Purchase Order incorporates by reference the EEO Clause contained in 41 C.F.R. Sections 60-1.4, 60-741.5, and 60-250.5.

CONTROVERSIES: Controversies and/or other disagreements between Buyer and Seller arising under this Contract shall be settled by arbitration which shall be a condition precedent to any right of legal action that either Buyer or Seller may have against the other party. Any arbitration shall be in accordance with the rules of the National Grain and Feed Association [NGFA]. At the time notice of arbitration is served by either Buyer or Seller upon the other, (I) if either is a member of NGFA, the NGFA Arbitration Committee shall serve as the arbitrator; (ii) if neither is a member of the NGFA, the American Arbitration Association shall serve as the arbitrator.

**GAVILON** ⌐

# Gavilon Grain, LLC

PINE BLUFF AR
509 ISLAND HARBOR MARINA RD
PINE BLUFF, AR 71602
870/419-7008

| | | |
|---|---|---|
| **Our Number:** | | **6055234** |
| **PRICED** | | **Purchase** |
| **Contract Date:** | | **3/8/2018** |

S
E  C & A FARMS
L    P.O. BOX 96
L
E
R    MARVELL        AR      72366

| | |
|---|---|
| Customer No. | 0000367046 |
| Payment Terms: | |
| Broker: | |
| Broker No.: | |
| Delivery Terms: | DLV PINE BLUFF |

SELLER AGREES TO AND CONFIRMS THE SALE OF THE FOLLOWING DESCRIBED COMMODITIES TO GAVILON GRAIN, LLC
(BUYER) SUBJECT TO THE TERMS AND CONDITIONS STATED ON THE FACE AND BACK THEREOF. FAILURE TO ADVISE
GAVILON GRAIN, LLC IMMEDIATELY BY WIRE OF ANY DISCREPANCY, OBJECTION TO OR DISAGREEMENT WITH SUCH
TERMS AND CONDITIONS SHALL BE AN ACCEPTANCE THEREOF.

**COMMODITY: #1YSB  YELLOW SOYBEANS**

**QUANTITY:    20,000.00        BU**

| | |
|---|---|
| WEIGHTS: | DESTINATION |
| GRADES: | DESTINATION |
| TRANSPORTATION: | TRUCK |
| REFERENCE: | |

| Status | Delivery Dates | Schedule Price | Futures Month | Futures Price | Basis Price | BU Priced |
|---|---|---|---|---|---|---|
| Priced | 9/1/2018 - 9/30/2018 | $10.27000 | Nov-18 | $10.40000 | -$0.13000 | 20,000.00 |

*DONE*

| | |
|---|---|
| Buyer's scale of discounts at time of delivery to apply. Rules to apply: NGFA | **Total Contracted  BUSHELS      20,000.00** |

BUYER OBJECTS TO THE INCLUSION OF ANY DIFFERENT OR ADDITIONAL TERMS PROPOSED BY SELLER. BUYER'S SCHEDULE OF
DISCOUNTS TO APPLY. SELLER GUARANTEES GRAIN U.S. GROWN. IF PRICE OF GRAIN IS ON A PREMIUM BASIS, CONTRACT TO BE
PRICED OR SPREAD PRIOR TO THE LAST TRADING DAY PRECEDING THE FIRST DELIVERY DAY OF THE FUTURES CONTRACT.

Confirmation Acknowledged *C + A Heidelberger Farms*          Gavilon Grain, LLC

By: *Judy Bartlett*          3-15-18              *S 6*          3-8-18

   C & A FARMS                    Date              SHANE YOUNG          Date

**PLEASE SIGN ONE COPY AND RETURN TO ABOVE ADDRESS.**

**EXHIBIT**

**C**

## TERMS AND CONDITIONS

Except as modified or limited by the terms and conditions stated herein, the Contract shall be governed by and construed in accordance with the applicable rules and regulations of the exchange, board or association designated on the face hereof, or, if none is designated or Seller is not a member of said exchange, board, or association, then the applicable trade rules of the National Grain and Feed Association in effect on the date hereof, and, to the extent not inconsistent therewith, the applicable provisions of the Uniform Commercial Code.

Seller warrants to Buyer that all grain sold and delivered hereunder will be of good, sound, dry and merchantable quality in accordance with the grade specified herein; that it will have been grown in the Continental United States unless a non-United States grown clause has been made a part of this Contract and so stated on the face hereof; that it will not be adulterated or misbranded within the meaning of the Federal Food, Drug and Cosmetic Act, nor be a commodity which may not, under the provisions of Section 404 or 505 of the Act, be introduced into interstate commerce; that neither any such grain nor the shipment thereof will be in violation of or subject to penalty, seizure or lien under any other federal, state or local law, ordinance regulation quota or order, and all grain sold hereunder will be delivered to Buyer free and clear of any and all liens, encumbrances, security interests, claims and penalties of any kind and nature.

In the event that a party hereto (the "Defaulting Party") becomes insolvent, or suffers or consents to or applies for the appointment of a receiver, trustee, custodian or liquidator of itself or any of its property, or generally fails to pay its debts as they become due, or makes a general assignment for the benefit of creditors, or files a voluntary petition in bankruptcy, or seeks reorganization, in order to effect a plan or other arrangement with creditors or any other relief under the Bankruptcy Code, Title 11 of the United States Code, as amended or recodified from time to time, or under any state or federal law granting relief to debtors then the other party (the "Non-defaulting Party") may (i) immediately cancel this Contract and all other Contracts between the parties hereto, (ii) liquidate such cancelled Contracts in a commercially reasonable manner, and (iii) aggregate such liquidated amounts into a single liquidated settlement amount (the "Settlement Amount") due, which shall be due and payable two (2) business days after written notice by the Non-defaulting Party. In addition, the Non-defaulting Party may set-off any amounts owed by the Defaulting Party to the Non-defaulting Party under any other agreements between the parties against any Settlement Amount owed by the Non-defaulting Party to the Defaulting Party hereunder.

The parties agree that each of them is a forward contract merchant as set forth in 11 U.S.C. Section 101(25). The parties also agree that this Contract and any other commodity contract between the parties are all forward contracts as defined in 11 U.S.C. Section 101(25). The payments and transfers described herein shall constitute "Settlement Payments" or "Margin Payments" as set forth in 11 U.S.C. Sections 101(51A) and (38).

Each Party consents to the recording of all telephone conversations between its representative and the representatives of the other Party.

This Contract is made on the basis of freight rates in effect on the date hereof. Any increase in freight rates taking effect before the full performance of this Contract shall be for the account of Seller unless otherwise adjusted and agreed upon between the parties at the time of the affected shipment.

All shipments of grain hereunder shall be made by Seller to the place of delivery designated herein. Buyer may subsequently designate any reasonable alternate place of delivery to facilitate Seller's performance of this Contract but shall have no obligation to do so. Any increased shipping charges incurred under this provision shall be for Seller's account and any reductions in shipping charges shall be for Buyer's account; provided however, if the designated alternate delivery points are solely for Buyer's convenience, increase shipping charges shall be for Buyer's account.

Unless otherwise specified, each shipment hereunder will be applied to the oldest open contract between Buyer and Seller.

Buyer reserves the right to apply off-grade grain at market difference without first notifying Seller.

Buyer's performance hereunder, or any delay in such performance, including the acceptance of deliveries of grain on the date or dates specified, shall be excused where such failure to perform or delay is attributable to any cause or reason beyond Buyer's control, including without limitation lack of available storage space, equipment breakdown, labor trouble, governmental regulations, transportation difficulties, embargoes, civil disturbances, acts of God, or any other causes of the like or different character beyond Buyer's control.

This Contract is intended by the parties as a final expression of their agreement and is intended also as a complete and exclusive statement of the terms and conditions of their agreement. This Contract is limited to the terms and conditions stated herein, which terms and conditions shall prevail insofar as they might in any way conflict with any terms or conditions of Seller's confirmation.

There are hereby incorporated herein by reference the respective Equal Opportunity Clauses set forth in 41 C.F.R. para. 60-1.4 (a), 41 C.F.R. para. 60-250.4 and 41 C.F.R. para. 60-741.4 to extent the incorporation thereof is required by or necessary for compliance with applicable federal laws, regulations or orders. As used in such clauses, "contractor" shall mean the Seller hereunder. Unless otherwise exempt, this Purchase Order incorporates by reference the EEO Clause contained in 41 C.F.R. Sections 60-1.4, 60-741.5, and 60-250.5.

CONTROVERIES: Controversies and/or other disagreements between Buyer and Seller arising under this Contract shall be settled by arbitration which shall be a condition precedent to any right of legal action that either Buyer or Seller may have against the other party. Any arbitration shall be in accordance with the rules of the National Grain and Feed Association [NGFA]. At the time notice of arbitration is served by either Buyer or Seller upon the other, (I) if either is a member of NGFA, the NGFA Arbitration Committee shall serve as the arbitrator; (ii) if neither is a member of the NGFA, the American Arbitration Association shall serve as the arbitrator.

# GAVILON ⎌

# Gavilon Grain, LLC

PINE BLUFF AR
509 ISLAND HARBOR MARINA RD
PINE BLUFF, AR 71602
870/419-7008

| | | | |
|---|---|---|---|
| **Our Number:** | | | **6052411** |
| **FUTURE ONLY-HTA** | | | **Purchase** |
| **Contract Date:** | | | **2/9/2018** |

S
E
L
L
E
R

C & A FARMS
P.O. BOX 96

MARVELL        AR        72366

Customer No.                    0000367046
Payment Terms:
Broker:
Broker No.:
Delivery Terms:              DLV PINE BLUFF

SELLER AGREES TO AND CONFIRMS THE SALE OF THE FOLLOWING DESCRIBED COMMODITIES TO GAVILON GRAIN, LLC (BUYER) SUBJECT TO THE TERMS AND CONDITIONS STATED ON THE FACE AND BACK THEREOF. FAILURE TO ADVISE GAVILON GRAIN, LLC IMMEDIATELY BY WIRE OF ANY DISCREPANCY, OBJECTION TO OR DISAGREEMENT WITH SUCH TERMS AND CONDITIONS SHALL BE AN ACCEPTANCE THEREOF.

**COMMODITY: #1YSB  YELLOW SOYBEANS**

**QUANTITY:      30,000.00            BU**

WEIGHTS:                          DESTINATION
GRADES:                           DESTINATION
TRANSPORTATION:              TRUCK
REFERENCE:
MARKET REGION:       PINE BLUFF AR

| Status | Delivery Dates | Schedule Price | Futures Month | Futures Price | Other Fees | BU Scheduled |
|---|---|---|---|---|---|---|
| Unpriced | 9/1/2018 - 9/30/2018 | $0.00000 | Nov-18 | $10.10000 | -$0.03000 | 30,000.00 |

Done

| | |
|---|---|
| Buyer's scale of discounts at time of delivery to apply. | **Total Contracted BUSHELS            30,000.00** |
| Rules to apply: NGFA | **TO BE PRICED DURING AN ACTIVE SESSION OF THE APPLICABLE EXCHANGE (CBOT/KBOT/MGE) PRIOR TO THE SECOND TO LAST TRADING DAY PRECEDING THE FIRST NOTICE DAY** |

HTA FEE .03
BASIS TO BE SET BEFORE DLV

BUYER OBJECTS TO THE INCLUSION OF ANY DIFFERENT OR ADDITIONAL TERMS PROPOSED BY SELLER. BUYER'S SCHEDULE OF DISCOUNTS TO APPLY. SELLER GUARANTEES GRAIN U.S. GROWN. IF PRICE OF GRAIN IS ON A PREMIUM BASIS, CONTRACT TO BE PRICED OR SPREAD PRIOR TO THE LAST TRADING DAY PRECEDING THE FIRST DELIVERY DAY OF THE FUTURES CONTRACT.

Confirmation Acknowledged:                              Gavilon Grain, LLC

_____                              S 6          2-09-18
         C & A FARMS            Date                        SHANE YOUNG            Date
**PLEASE SIGN ONE COPY AND RETURN TO ABOVE ADDRESS.**

# TERMS AND CONDITIONS

Except as modified or limited by the terms and conditions stated herein, the Contract shall be governed by and construed in accordance with the applicable rules and regulations of the exchange, board or association designated on the face hereof, or, if none is designated or Seller is not a member of said exchange, board, or association, then the applicable trade rules of the National Grain and Feed Association in effect on the date hereof, and, to the extent not inconsistent therewith, the applicable provisions of the Uniform Commercial Code.

Seller warrants to Buyer that all grain sold and delivered hereunder will be of good, sound, dry and merchantable quality in accordance with the grade specified herein; that it will have been grown in the Continental United States unless a non-United States grown clause has been made a part of this Contract and so stated on the face hereof; that it will not be adulterated or misbranded within the meaning of the Federal Food, Drug and Cosmetic Act, nor be a commodity which may not, under the provisions of Section 404 or 505 of the Act, be introduced into interstate commerce; that neither any such grain nor the shipment thereof will be in violation of or subject to penalty, seizure or lien under any other federal, state or local law, ordinance regulation quota or order, and all grain sold hereunder will be delivered to Buyer free and clear of any and all liens, encumbrances, security interests, claims and penalties of any kind and nature.

In the event that a party hereto (the "Defaulting Party") becomes insolvent, or suffers or consents to or applies for the appointment of a receiver, trustee, custodian or liquidator of itself or any of its property, or generally fails to pay its debts as they become due, or makes a general assignment for the benefit of creditors, or files a voluntary petition in bankruptcy, or seeks reorganization, in order to effect a plan or other arrangement with creditors or any other relief under the Bankruptcy Code, Title 11 of the United States Code, as amended or recodified from time to time, or under any state or federal law granting relief to debtors then the other party (the "Non-defaulting Party") may (i) immediately cancel this Contract and all other Contracts between the parties hereto, (ii) liquidate such cancelled Contracts in a commercially reasonable manner, and (iii) aggregate such liquidated amounts into a single liquidated settlement amount (the "Settlement Amount") due, which shall be due and payable two (2) business days after written notice by the Non-defaulting Party. In addition, the Non-defaulting Party may set-off any amounts owed by the Defaulting Party to the Non-defaulting Party under any other agreements between the parties against any Settlement Amount owed by the Non-defaulting Party to the Defaulting Party hereunder.

The parties agree that each of them is a forward contract merchant as set forth in 11 U.S.C. Section 101(25). The parties also agree that this Contract and any other commodity contract between the parties are all forward contracts as defined in 11 U.S.C. Section 101(25). The payments and transfers described herein shall constitute "Settlement Payments" or "Margin Payments" as set forth in 11 U.S.C. Sections 101(51A) and (38).

Each Party consents to the recording of all telephone conversations between its representative and the representatives of the other Party.

This Contract is made on the basis of freight rates in effect on the date hereof. Any increase in freight rates taking effect before the full performance of this Contract shall be for the account of Seller unless otherwise adjusted and agreed upon between the parties at the time of the affected shipment.

All shipments of grain hereunder shall be made by Seller to the place of delivery designated herein. Buyer may subsequently designate any reasonable alternate place of delivery to facilitate Seller's performance of this Contract but shall have no obligation to do so. Any increased shipping charges incurred under this provision shall be for Seller's account and any reductions in shipping charges shall be for Buyer's account; provided however, if the designated alternate delivery points are solely for Buyer's convenience, increase shipping charges shall be for Buyer's account.

Unless otherwise specified, each shipment hereunder will be applied to the oldest open contract between Buyer and Seller.

Buyer reserves the right to apply off-grade grain at market difference without first notifying Seller.

Buyer's performance hereunder, or any delay in such performance, including the acceptance of deliveries of grain on the date or dates specified, shall be excused where such failure to perform or delay is attributable to any cause or reason beyond Buyer's control, including without limitation lack of available storage space, equipment breakdown, labor trouble, governmental regulations, transportation difficulties, embargoes, civil disturbances, acts of God, or any other causes of the like or different character beyond Buyer's control.

This Contract is intended by the parties as a final expression of their agreement and is intended also as a complete and exclusive statement of the terms and conditions of their agreement. This Contract is limited to the terms and conditions stated herein, which terms and conditions shall prevail insofar as they might in any way conflict with any terms or conditions of Seller's confirmation.

There are hereby incorporated herein by reference the respective Equal Opportunity Clauses set forth in 41 C.F.R. para. 60-1.4 (a), 41 C.F.R. para. 60-250.4 and 41 C.F.R. para. 60-741.4 to extent the incorporation thereof is required by or necessary for compliance with applicable federal laws, regulations or orders. As used in such clauses, "contractor" shall mean the Seller hereunder. Unless otherwise exempt, this Purchase Order incorporates by reference the EEO Clause contained in 41 C.F.R. Sections 60-1.4, 60-741.5, and 60-250.5.

CONTROVERSIES: Controversies and/or other disagreements between Buyer and Seller arising under this Contract shall be settled by arbitration which shall be a condition precedent to any right of legal action that either Buyer or Seller may have against the other party. Any arbitration shall be in accordance with the rules of the National Grain and Feed Association [NGFA]. At the time notice of arbitration is served by either Buyer or Seller upon the other, (I) if either is a member of NGFA, the NGFA Arbitration Committee shall serve as the arbitrator; (ii) if neither is a member of the NGFA, the American Arbitration Association shall serve as the arbitrator.

# GAVILON ⌂

# Gavilon Grain, LLC

PINE BLUFF AR
509 ISLAND HARBOR MARINA RD
PINE BLUFF, AR 71602
870/419-7008

| | |
|---|---|
| **Our Number:** | **6052415** |
| **FUTURE ONLY-HTA** | **Purchase** |
| Contract Date: | 2/12/2018 |

S
E   C & A FARMS
L   P.O. BOX 96
L
E
R   MARVELL      AR      72366

| | |
|---|---|
| Customer No. | 0000367046 |
| Payment Terms: | |
| Broker: | |
| Broker No.: | |
| Delivery Terms: | DLV PINE BLUFF |

SELLER AGREES TO AND CONFIRMS THE SALE OF THE FOLLOWING DESCRIBED COMMODITIES TO GAVILON, LLC (BUYER) SUBJECT TO THE TERMS AND CONDITIONS STATED ON THE FACE AND BACK THEREOF. FAILURE TO ADVISE GAVILON GRAIN, LLC IMMEDIATELY BY WIRE OF ANY DISCREPANCY, OBJECTION TO OR DISAGREEMENT WITH SUCH TERMS AND CONDITIONS SHALL BE AN ACCEPTANCE THEREOF.

| | |
|---|---|
| WEIGHTS: | DESTINATION |
| COMMODITY: #1YSB YELLOW SOYBEANS | GRADES: DESTINATION |
| QUANTITY: **20,000.00** BU | TRANSPORTATION: TRUCK |
| | REFERENCE: |
| | MARKET REGION: PINE BLUFF AR |

| Status | Delivery Dates | Schedule Price | Futures Month | Futures Price | Other Fees | BU Scheduled |
|---|---|---|---|---|---|---|
| Unpriced | 9/1/2018 - 9/30/2018 | $0.00000 | Nov-18 | $10.10000 | -$0.03000 | 20,000.00 |

*Done*

| | | |
|---|---|---|
| Buyer's scale of discounts at time of delivery to apply. | **Total Contracted BUSHELS** | **20,000.00** |
| Rules to apply: NGFA | TO BE PRICED DURING AN ACTIVE SESSION OF THE APPLICABLE EXCHANGE (CBOT/KBOT/MGE) PRIOR TO THE SECOND TO LAST TRADING DAY PRECEDING THE FIRST NOTICE DAY | |

HTA FEE .03
BASIS SET BEFORE DLV

BUYER OBJECTS TO THE INCLUSION OF ANY DIFFERENT OR ADDITIONAL TERMS PROPOSED BY SELLER. BUYER'S SCHEDULE OF DISCOUNTS TO APPLY. SELLER GUARANTEES GRAIN U.S. GROWN. IF PRICE OF GRAIN IS ON A PREMIUM BASIS, CONTRACT TO BE PRICED OR SPREAD PRIOR TO THE LAST TRADING DAY PRECEDING THE FIRST DELIVERY DAY OF THE FUTURES CONTRACT.

Confirmation Acknowledged:                                     Gavilon Grain, LLC

_____          ___S G_____  2-12-18
C & A FARMS          Date          SHANE YOUNG          Date
**PLEASE SIGN ONE COPY AND RETURN TO ABOVE ADDRESS.**

# TERMS AND CONDITIONS

Except as modified or limited by the terms and conditions stated herein, the Contract shall be governed by and construed in accordance with the applicable rules and regulations of the exchange, board or association designated on the face hereof, or, if none is designated or Seller is not a member of said exchange, board, or association, then the applicable trade rules of the National Grain and Feed Association in effect on the date hereof, and, to the extent not inconsistent therewith, the applicable provisions of the Uniform Commercial Code.

Seller warrants to Buyer that all grain sold and delivered hereunder will be of good, sound, dry and merchantable quality in accordance with the grade specified herein; that it will have been grown in the Continental United States unless a non-United States grown clause has been made a part of this Contract and so stated on the face hereof; that it will not be adulterated or misbranded within the meaning of the Federal Food, Drug and Cosmetic Act, nor be a commodity which may not, under the provisions of Section 404 or 505 of the Act, be introduced into interstate commerce; that neither any such grain nor the shipment thereof will be in violation of or subject to penalty, seizure or lien under any other federal, state or local law, ordinance regulation quota or order, and all grain sold hereunder will be delivered to Buyer free and clear of any and all liens, encumbrances, security interests, claims and penalties of any kind and nature.

In the event that a party hereto (the "Defaulting Party") becomes insolvent, or suffers or consents to or applies for the appointment of a receiver, trustee, custodian or liquidator of itself or any of its property, or generally fails to pay its debts as they become due, or makes a general assignment for the benefit of creditors, or files a voluntary petition in bankruptcy, or seeks reorganization, in order to effect a plan or other arrangement with creditors or any other relief under the Bankruptcy Code, Title 11 of the United States Code, as amended or recodified from time to time, or under any state or federal law granting relief to debtors then the other party (the "Non-defaulting Party") may (i) immediately cancel this Contract and all other Contracts between the parties hereto, (ii) liquidate such cancelled Contracts in a commercially reasonable manner, and (iii) aggregate such liquidated amounts into a single liquidated settlement amount (the "Settlement Amount") due, which shall be due and payable two (2) business days after written notice by the Non-defaulting Party. In addition, the Non-defaulting Party may set-off any amounts owed by the Defaulting Party to the Non-defaulting Party under any other agreements between the parties against any Settlement Amount owed by the Non-defaulting Party to the Defaulting Party hereunder.

The parties agree that each of them is a forward contract merchant as set forth in 11 U.S.C. Section 101(25). The parties also agree that this Contract and any other commodity contract between the parties are all forward contracts as defined in 11 U.S.C. Section 101(25). The payments and transfers described herein shall constitute "Settlement Payments" or "Margin Payments" as set forth in 11 U.S.C. Sections 101(51A) and (38).

Each Party consents to the recording of all telephone conversations between its representative and the representatives of the other Party.

This Contract is made on the basis of freight rates in effect on the date hereof. Any increase in freight rates taking effect before the full performance of this Contract shall be for the account of Seller unless otherwise adjusted and agreed upon between the parties at the time of the affected shipment.

All shipments of grain hereunder shall be made by Seller to the place of delivery designated herein. Buyer may subsequently designate any reasonable alternate place of delivery to facilitate Seller's performance of this Contract but shall have no obligation to do so. Any increased shipping charges incurred under this provision shall be for Seller's account and any reductions in shipping charges shall be for Buyer's account; provided however, if the designated alternate delivery points are solely for Buyer's convenience, increase shipping charges shall be for Buyer's account.

Unless otherwise specified, each shipment hereunder will be applied to the oldest open contract between Buyer and Seller.

Buyer reserves the right to apply off-grade grain at market difference without first notifying Seller.

Buyer's performance hereunder, or any delay in such performance, including the acceptance of deliveries of grain on the date or dates specified, shall be excused where such failure to perform or delay is attributable to any cause or reason beyond Buyer's control, including without limitation lack of available storage space, equipment breakdown, labor trouble, governmental regulations, transportation difficulties, embargoes, civil disturbances, acts of God, or any other causes of the like or different character beyond Buyer's control.

This Contract is intended by the parties as a final expression of their agreement and is intended also as a complete and exclusive statement of the terms and conditions of their agreement. This Contract is limited to the terms and conditions stated herein, which terms and conditions shall prevail insofar as they might in any way conflict with any terms or conditions of Seller's confirmation.

There are hereby incorporated herein by reference the respective Equal Opportunity Clauses set forth in 41 C.F.R. para. 60-1.4 (a), 41 C.F.R. para. 60-250.4 and 41 C.F.R. para. 60-741.4 to extent the incorporation thereof is required by or necessary for compliance with applicable federal laws, regulations or orders. As used in such clauses, "contractor" shall mean the Seller hereunder. Unless otherwise exempt, this Purchase Order incorporates by reference the EEO Clause contained in 41 C.F.R. Sections 60-1.4, 60-741.5, and 60-250.5.

CONTROVERSIES: Controversies and/or other disagreements between Buyer and Seller arising under this Contract shall be settled by arbitration which shall be a condition precedent to any right of legal action that either Buyer or Seller may have against the other party. Any arbitration shall be in accordance with the rules of the National Grain and Feed Association [NGFA]. At the time notice of arbitration is served by either Buyer or Seller upon the other, (I) if either is a member of NGFA, the NGFA Arbitration Committee shall serve as the arbitrator; (ii) if neither is a member of the NGFA, the American Arbitration Association shall serve as the arbitrator.

# GAVILON ⟨G⟩          ## Gavilon Grain, LLC

PINE BLUFF AR
509 ISLAND HARBOR MARINA RD
PINE BLUFF, AR 71602
870/419-7008

**CONFIRMATION OF PRICING
AND/OR ORIGINAL CONTRACT
AMENDMENT**

| | |
|---|---|
| **Our Number:** | **6052415** |
| **FUTURE ONLY-HTA** | **Purchase** |
| Contract Date: | 2/12/2018 |
| Customer No. | 0000367046 |
| Broker: | |
| Broker No.: | |
| Delivery Terms: | DLV PINE BLUFF |

S
E    C & A FARMS
L    P.O. BOX 96
L
E
R    MARVELL        AR      72366

THIS CONFIRMATION COVERS OUR UNDERSTANDING OF PRICING, AND/OR, OF AMENDMENT(S) IN PRIOR STIPULATIONS, TERMS, OR CONDITIONS OF THE CONTRACT SO DESIGNATED. THE NEW TERMS ARE TO BE CONSIDERED AS PART OF THE ORIGINAL CONTRACT AND ARE MADE WITH THE BEST INTERESTS OF BOTH PARTIES IN MIND. FAILURE TO ADVISE GAVILON GRAIN, LLC IMMEDIATELY BY WIRE OF ANY DISCREPANCY, OBJECTION TO OR DISAGREEMENT WITH SUCH TERMS AND CONDITIONS SHALL BE AN ACCEPTANCE THEREOF.

| | | | |
|---|---|---|---|
| **COMMODITY: #1YSB  YELLOW SOYBEANS** | | WEIGHTS: | DESTINATION |
| **TOTAL QUANTITY:** | 20,000.00 | GRADES: | DESTINATION |
| **PRICED QUANTITY:** | 20,000.00 | TRANSPORTATION: | TRUCK |
| **UNPRICED QUANTITY:** | 0.00 | REFERENCE: | |

| Status | Pricing Date | Delivery Dates | Schedule Price | Futures Month | Futures Price | Basis Price | BU Unpriced | BU Priced |
|---|---|---|---|---|---|---|---|---|
| Priced | 10/4/2018 | 9/1/2018 - 9/30/2018 | $9.42000 | Nov-18 | $10.10000 | -$0.68000 | 0.00 | 20,000.00 |

| | |
|---|---|
| Buyer's scale of discounts at time of delivery to apply. Rules to apply: NGFA | **Total Priced BUSHELS**    **20,000.00** |

HTA FEE .03
BASIS SET BEFORE DLV

BUYER OBJECTS TO THE INCLUSION OF ANY DIFFERENT OR ADDITIONAL TERMS PROPOSED BY SELLER.

Confirmation Acknowledged:                    Gavilon Grain, LLC

*C+A Heidelberg Farms*
Signer2  *By: Andy Bartlott*   Date2 *10-4-18*       Signer1 *Robert Rhodes*   Date1 *10/4/18*
        C & A FARMS                              ROBERT RHODES
                    **PLEASE SIGN ONE COPY AND RETURN TO ABOVE ADDRESS.**

## TERMS AND CONDITIONS

Except as modified or limited by the terms and conditions stated herein, the Contract shall be governed by and construed in accordance with the applicable rules and regulations of the exchange, board or association designated on the face hereof, or, if none is designated or Seller is not a member of said exchange, board, or association, then the applicable trade rules of the National Grain and Feed Association in effect on the date hereof, and, to the extent not inconsistent therewith, the applicable provisions of the Uniform Commercial Code.

Seller warrants to Buyer that all grain sold and delivered hereunder will be of good, sound, dry and merchantable quality in accordance with the grade specified herein; that it will have been grown in the Continental United States unless a non-United States grown clause has been made a part of this Contract and so stated on the face hereof; that it will not be adulterated or misbranded within the meaning of the Federal Food, Drug and Cosmetic Act, nor be a commodity which may not, under the provisions of Section 404 or 505 of the Act, be introduced into interstate commerce; that neither any such grain nor the shipment thereof will be in violation of or subject to penalty, seizure or lien under any other federal, state or local law, ordinance regulation quota or order, and all grain sold hereunder will be delivered to Buyer free and clear of any and all liens, encumbrances, security interests, claims and penalties of any kind and nature.

In the event that a party hereto (the "Defaulting Party") becomes insolvent, or suffers or consents to or applies for the appointment of a receiver, trustee, custodian or liquidator of itself or any of its property, or generally fails to pay its debts as they become due, or makes a general assignment for the benefit of creditors, or files a voluntary petition in bankruptcy, or seeks reorganization, in order to effect a plan or other arrangement with creditors or any other relief under the Bankruptcy Code, Title 11 of the United States Code, as amended or recodified from time to time, or under any state or federal law granting relief to debtors then the other party (the "Non-defaulting Party") may (i) immediately cancel this Contract and all other Contracts between the parties hereto, (ii) liquidate such cancelled Contracts in a commercially reasonable manner, and (iii) aggregate such liquidated amounts into a single liquidated settlement amount (the "Settlement Amount") due, which shall be due and payable two (2) business days after written notice by the Non-defaulting Party. In addition, the Non-defaulting Party may set-off any amounts owed by the Defaulting Party to the Non-defaulting Party under any other agreements between the parties against any Settlement Amount owed by the Non-defaulting Party to the Defaulting Party hereunder.

The parties agree that each of them is a forward contract merchant as set forth in 11 U.S.C. Section 101(25). The parties also agree that this Contract and any other commodity contract between the parties are all forward contracts as defined in 11 U.S.C. Section 101(25). The payments and transfers described herein shall constitute "Settlement Payments" or "Margin Payments" as set forth in 11 U.S.C. Sections 101(51A) and (38).

Each Party consents to the recording of all telephone conversations between its representative and the representatives of the other Party.

This Contract is made on the basis of freight rates in effect on the date hereof. Any increase in freight rates taking effect before the full performance of this Contract shall be for the account of Seller unless otherwise adjusted and agreed upon between the parties at the time of the affected shipment.

All shipments of grain hereunder shall be made by Seller to the place of delivery designated herein. Buyer may subsequently designate any reasonable alternate place of delivery to facilitate Seller's performance of this Contract but shall have no obligation to do so. Any increased shipping charges incurred under this provision shall be for Seller's account and any reductions in shipping charges shall be for Buyer's account; provided however, if the designated alternate delivery points are solely for Buyer's convenience, increase shipping charges shall be for Buyer's account.

Unless otherwise specified, each shipment hereunder will be applied to the oldest open contract between Buyer and Seller.

Buyer reserves the right to apply off-grade grain at market difference without first notifying Seller.

Buyer's performance hereunder, or any delay in such performance, including the acceptance of deliveries of grain on the date or dates specified, shall be excused where such failure to perform or delay is attributable to any cause or reason beyond Buyer's control, including without limitation lack of available storage space, equipment breakdown, labor trouble, governmental regulations, transportation difficulties, embargoes, civil disturbances, acts of God, or any other causes of the like or different character beyond Buyer's control.

This Contract is intended by the parties as a final expression of their agreement and is intended also as a complete and exclusive statement of the terms and conditions of their agreement. This Contract is limited to the terms and conditions stated herein, which terms and conditions shall prevail insofar as they might in any way conflict with any terms or conditions of Seller's confirmation.

There are hereby incorporated herein by reference the respective Equal Opportunity Clauses set forth in 41 C.F.R. para. 60-1.4 (a), 41 C.F.R. para. 60-250.4 and 41 C.F.R. para. 60-741.4 to extent the incorporation thereof is required by or necessary for compliance with applicable federal laws, regulations or orders. As used in such clauses, "contractor" shall mean the Seller hereunder. Unless otherwise exempt, this Purchase Order incorporates by reference the EEO Clause contained in 41 C.F.R. Sections 60-1.4, 60-741.5, and 60-250.5.

CONTROVERSIES: Controversies and/or other disagreements between Buyer and Seller arising under this Contract shall be settled by arbitration which shall be a condition precedent to any right of legal action that either Buyer or Seller may have against the other party. Any arbitration shall be in accordance with the rules of the National Grain and Feed Association [NGFA]. At the time notice of arbitration is served by either Buyer or Seller upon the other, (I) if either is a member of NGFA, the NGFA Arbitration Committee shall serve as the arbitrator; (ii) if neither is a member of the NGFA, the American Arbitration Association shall serve as the arbitrator.

# GAVILON ▽

# Gavilon Grain, LLC

PINE BLUFF AR
509 ISLAND HARBOR MARINA RD
PINE BLUFF, AR 71602
870/419-7008

| | |
|---|---|
| **Our Number:** | **6052412** |
| **FUTURE ONLY-HTA** | **Purchase** |
| Contract Date: | 2/9/2018 |

**S E L L E R**

BROCATO & UNGER FARMS
P.O. BOX 96

MARVELL          AR      72366

| | |
|---|---|
| Customer No. | 0000367047 |
| Payment Terms: | |
| Broker: | |
| Broker No.: | |
| Delivery Terms: | DLV PINE BLUFF |

SELLER AGREES TO AND CONFIRMS THE SALE OF THE FOLLOWING DESCRIBED COMMODITIES TO GAVILON GRAIN, LLC (BUYER) SUBJECT TO THE TERMS AND CONDITIONS STATED ON THE FACE AND BACK THEREOF. FAILURE TO ADVISE GAVILON GRAIN, LLC IMMEDIATELY BY WIRE OF ANY DISCREPANCY, OBJECTION TO OR DISAGREEMENT WITH SUCH TERMS AND CONDITIONS SHALL BE AN ACCEPTANCE THEREOF.

| | |
|---|---|
| WEIGHTS: | DESTINATION |
| GRADES: | DESTINATION |
| TRANSPORTATION: | TRUCK |
| REFERENCE: | |
| MARKET REGION: | PINE BLUFF AR |

~~COMMODITY: #1YSB  YELLOW SOYBEANS~~

**QUANTITY:   5,000.00          BU**

| Status | Delivery Dates | Schedule Price | Futures Month | Futures Price | Other Fees | BU Scheduled |
|---|---|---|---|---|---|---|
| Unpriced | 9/1/2018 - 9/30/2018 | $0.00000 | Nov-18 | $10.10000 | -$0.03000 | 5,000.00 |

| Buyer's scale of discounts at time of delivery to apply. Rules to apply: NGFA | *Done* **Total Contracted  BUSHELS          5,000.00** TO BE PRICED DURING AN ACTIVE SESSION OF THE APPLICABLE EXCHANGE (CBOT/KBOT/MGE) PRIOR TO THE SECOND TO LAST TRADING DAY PRECEDING THE FIRST NOTICE DAY |
|---|---|

HTA FEE .03
BASIS TO BE SET BEFORE DLV

**EXHIBIT**

**D**

BUYER OBJECTS TO THE INCLUSION OF ANY DIFFERENT OR ADDITIONAL TERMS PROPOSED BY SELLER. BUYER'S SCHEDULE OF DISCOUNTS TO APPLY. SELLER GUARANTEES GRAIN U.S. GROWN. IF PRICE OF GRAIN IS ON A PREMIUM BASIS, CONTRACT TO BE PRICED OR SPREAD PRIOR TO THE LAST TRADING DAY PRECEDING THE FIRST DELIVERY DAY OF THE FUTURES CONTRACT.

Confirmation Acknowledged:

Gavilon Grain, LLC

_____          2-09-18

BROCATO & UNGER FARMS        Date          SHANE YOUNG          Date

**PLEASE SIGN ONE COPY AND RETURN TO ABOVE ADDRESS.**

## TERMS AND CONDITIONS

Except as modified or limited by the terms and conditions stated herein, the Contract shall be governed by and construed in accordance with the applicable rules and regulations of the exchange, board or association designated on the face hereof, or, if none is designated or Seller is not a member of said exchange, board, or association, then the applicable trade rules of the National Grain and Feed Association in effect on the date hereof, and, to the extent not inconsistent therewith, the applicable provisions of the Uniform Commercial Code.

Seller warrants to Buyer that all grain sold and delivered hereunder will be of good, sound, dry and merchantable quality in accordance with the grade specified herein; that it will have been grown in the Continental United States unless a non-United States grown clause has been made a part of this Contract and so stated on the face hereof; that it will not be adulterated or misbranded within the meaning of the Federal Food, Drug and Cosmetic Act, nor be a commodity which may not, under the provisions of Section 404 or 505 of the Act, be introduced into interstate commerce; that neither any such grain nor the shipment thereof will be in violation of or subject to penalty, seizure or lien under any other federal, state or local law, ordinance regulation quota or order, and all grain sold hereunder will be delivered to Buyer free and clear of any and all liens, encumbrances, security interests, claims and penalties of any kind and nature.

In the event that a party hereto (the "Defaulting Party") becomes insolvent, or suffers or consents to or applies for the appointment of a receiver, trustee, custodian or liquidator of itself or any of its property, or generally fails to pay its debts as they become due, or makes a general assignment for the benefit of creditors, or files a voluntary petition in bankruptcy, or seeks reorganization, in order to effect a plan or other arrangement with creditors or any other relief under the Bankruptcy Code, Title 11 of the United States Code, as amended or recodified from time to time, or under any state or federal law granting relief to debtors then the other party (the "Non-defaulting Party") may (i) immediately cancel this Contract and all other Contracts between the parties hereto, (ii) liquidate such cancelled Contracts in a commercially reasonable manner, and (iii) aggregate such liquidated amounts into a single liquidated settlement amount (the "Settlement Amount") due, which shall be due and payable two (2) business days after written notice by the Non-defaulting Party. In addition, the Non-defaulting Party may set-off any amounts owed by the Defaulting Party to the Non-defaulting Party under any other agreements between the parties against any Settlement Amount owed by the Non-defaulting Party to the Defaulting Party hereunder.

The parties agree that each of them is a forward contract merchant as set forth in 11 U.S.C. Section 101(25). The parties also agree that this Contract and any other commodity contract between the parties are all forward contracts as defined in 11 U.S.C. Section 101(25). The payments and transfers described herein shall constitute "Settlement Payments" or "Margin Payments" as set forth in 11 U.S.C. Sections 101(51A) and (38).

Each Party consents to the recording of all telephone conversations between its representative and the representatives of the other Party.

This Contract is made on the basis of freight rates in effect on the date hereof. Any increase in freight rates taking effect before the full performance of this Contract shall be for the account of Seller unless otherwise adjusted and agreed upon between the parties at the time of the affected shipment.

All shipments of grain hereunder shall be made by Seller to the place of delivery designated herein. Buyer may subsequently designate any reasonable alternate place of delivery to facilitate Seller's performance of this Contract but shall have no obligation to do so. Any increased shipping charges incurred under this provision shall be for Seller's account and any reductions in shipping charges shall be for Buyer's account; provided however, if the designated alternate delivery points are solely for Buyer's convenience, increase shipping charges shall be for Buyer's account.

Unless otherwise specified, each shipment hereunder will be applied to the oldest open contract between Buyer and Seller.

Buyer reserves the right to apply off-grade grain at market difference without first notifying Seller.

Buyer's performance hereunder, or any delay in such performance, including the acceptance of deliveries of grain on the date or dates specified, shall be excused where such failure to perform or delay is attributable to any cause or reason beyond Buyer's control, including without limitation lack of available storage space, equipment breakdown, labor trouble, governmental regulations, transportation difficulties, embargoes, civil disturbances, acts of God, or any other causes of the like or different character beyond Buyer's control.

This Contract is intended by the parties as a final expression of their agreement and is intended also as a complete and exclusive statement of the terms and conditions of their agreement. This Contract is limited to the terms and conditions stated herein, which terms and conditions shall prevail insofar as they might in any way conflict with any terms or conditions of Seller's confirmation.

There are hereby incorporated herein by reference the respective Equal Opportunity Clauses set forth in 41 C.F.R. para. 60-1.4 (a), 41 C.F.R. para. 60-250.4 and 41 C.F.R. para. 60-741.4 to extent the incorporation thereof is required by or necessary for compliance with applicable federal laws, regulations or orders. As used in such clauses, "contractor" shall mean the Seller hereunder. Unless otherwise exempt, this Purchase Order incorporates by reference the EEO Clause contained in 41 C.F.R. Sections 60-1.4, 60-741.5, and 60-250.5.

CONTROVERSIES: Controversies and/or other disagreements between Buyer and Seller arising under this Contract shall be settled by arbitration which shall be a condition precedent to any right of legal action that either Buyer or Seller may have against the other party. Any arbitration shall be in accordance with the rules of the National Grain and Feed Association [NGFA]. At the time notice of arbitration is served by either Buyer or Seller upon the other, (I) if either is a member of NGFA, the NGFA Arbitration Committee shall serve as the arbitrator; (ii) if neither is a member of the NGFA, the American Arbitration Association shall serve as the arbitrator.

# GAVILON ⌐

# Gavilon Grain, LLC

PINE BLUFF AR
509 ISLAND HARBOR MARINA RD
PINE BLUFF, AR 71602
870/419-7008

| | |
|---|---|
| **Our Number:** | **6052414** |
| **FUTURE ONLY-HTA** | **Purchase** |
| Contract Date: | 2/12/2018 |

S
E    BROCATO & UNGER FARMS
L    P.O. BOX 96
L
E
R    MARVELL        AR    72366

| | |
|---|---|
| Customer No. | 0000367047 |
| Payment Terms: | |
| Broker: | |
| Broker No.: | |
| Delivery Terms: | DLV PINE BLUFF |

SELLER AGREES TO AND CONFIRMS THE SALE OF THE FOLLOWING DESCRIBED COMMODITIES TO GAVILON GRAIN, LLC
(BUYER) SUBJECT TO THE TERMS AND CONDITIONS STATED ON THE FACE AND BACK THEREOF. FAILURE TO ADVISE
GAVILON GRAIN, LLC IMMEDIATELY BY WIRE OF ANY DISCREPANCY, OBJECTION TO OR DISAGREEMENT WITH SUCH
TERMS AND CONDITIONS SHALL BE AN ACCEPTANCE THEREOF.

COMMODITY: #1YSB  YELLOW SOYBEANS

**QUANTITY:   20,000.00        BU**

| | |
|---|---|
| WEIGHTS: | DESTINATION |
| GRADES: | DESTINATION |
| TRANSPORTATION: | TRUCK |
| REFERENCE: | |
| MARKET REGION: | PINE BLUFF AR |

| Status | Delivery Dates | Schedule Price | Futures Month | Futures Price | Other Fees | BU Scheduled |
|---|---|---|---|---|---|---|
| Unpriced | 9/1/2018 - 9/30/2018 | $0.00000 | Nov-18 | $10.10000 | -$0.03000 | 20,000.00 |

*Done*

| | |
|---|---|
| Buyer's scale of discounts at time of delivery to apply. | **Total Contracted BUSHELS        20,000.00** |
| Rules to apply: NGFA | **TO BE PRICED DURING AN ACTIVE SESSION OF THE APPLICABLE EXCHANGE (CBOT/KBOT/MGE) PRIOR TO THE SECOND TO LAST TRADING DAY PRECEDING THE FIRST NOTICE DAY** |

HTA FEE .03
SET BASIS BEFORE DLV

BUYER OBJECTS TO THE INCLUSION OF ANY DIFFERENT OR ADDITIONAL TERMS PROPOSED BY SELLER. BUYER'S SCHEDULE OF
DISCOUNTS TO APPLY. SELLER GUARANTEES GRAIN U.S. GROWN. IF PRICE OF GRAIN IS ON A PREMIUM BASIS, CONTRACT TO BE
PRICED OR SPREAD PRIOR TO THE LAST TRADING DAY PRECEDING THE FIRST DELIVERY DAY OF THE FUTURES CONTRACT.

Confirmation Acknowledged:                          Gavilon Grain, LLC

_____          _____          _____   2-12-18
BROCATO & UNGER FARMS          Date                   SHANE YOUNG                    Date
**PLEASE SIGN ONE COPY AND RETURN TO ABOVE ADDRESS.**

## TERMS AND CONDITIONS

Except as modified or limited by the terms and conditions stated herein, the Contract shall be governed by and construed in accordance with the applicable rules and regulations of the exchange, board or association designated on the face hereof, or, if none is designated or Seller is not a member of said exchange, board, or association, then the applicable trade rules of the National Grain and Feed Association in effect on the date hereof, and, to the extent not inconsistent therewith, the applicable provisions of the Uniform Commercial Code.

Seller warrants to Buyer that all grain sold and delivered hereunder will be of good, sound, dry and merchantable quality in accordance with the grade specified herein; that it will have been grown in the Continental United States unless a non-United States grown clause has been made a part of this Contract and so stated on the face hereof; that it will not be adulterated or misbranded within the meaning of the Federal Food, Drug and Cosmetic Act, nor be a commodity which may not, under the provisions of Section 404 or 505 of the Act, be introduced into interstate commerce; that neither any such grain nor the shipment thereof will be in violation of or subject to penalty, seizure or lien under any other federal, state or local law, ordinance regulation quota or order, and all grain sold hereunder will be delivered to Buyer free and clear of any and all liens, encumbrances, security interests, claims and penalties of any kind and nature.

In the event that a party hereto (the "Defaulting Party") becomes insolvent, or suffers or consents to or applies for the appointment of a receiver, trustee, custodian or liquidator of itself or any of its property, or generally fails to pay its debts as they become due, or makes a general assignment for the benefit of creditors, or files a voluntary petition in bankruptcy, or seeks reorganization, in order to effect a plan or other arrangement with creditors or any other relief under the Bankruptcy Code, Title 11 of the United States Code, as amended or recodified from time to time, or under any state or federal law granting relief to debtors then the other party (the "Non-defaulting Party") may (i) immediately cancel this Contract and all other Contracts between the parties hereto, (ii) liquidate such cancelled Contracts in a commercially reasonable manner, and (iii) aggregate such liquidated amounts into a single liquidated settlement amount (the "Settlement Amount") due, which shall be due and payable two (2) business days after written notice by the Non-defaulting Party. In addition, the Non-defaulting Party may set-off any amounts owed by the Defaulting Party to the Non-defaulting Party under any other agreements between the parties against any Settlement Amount owed by the Non-defaulting Party to the Defaulting Party hereunder.

The parties agree that each of them is a forward contract merchant as set forth in 11 U.S.C. Section 101(25). The parties also agree that this Contract and any other commodity contract between the parties are all forward contracts as defined in 11 U.S.C. Section 101(25). The payments and transfers described herein shall constitute "Settlement Payments" or "Margin Payments" as set forth in 11 U.S.C. Sections 101(51A) and (38).

Each Party consents to the recording of all telephone conversations between its representative and the representatives of the other Party.

This Contract is made on the basis of freight rates in effect on the date hereof. Any increase in freight rates taking effect before the full performance of this Contract shall be for the account of Seller unless otherwise adjusted and agreed upon between the parties at the time of the affected shipment.

All shipments of grain hereunder shall be made by Seller to the place of delivery designated herein. Buyer may subsequently designate any reasonable alternate place of delivery to facilitate Seller's performance of this Contract but shall have no obligation to do so. Any increased shipping charges incurred under this provision shall be for Seller's account and any reductions in shipping charges shall be for Buyer's account; provided however, if the designated alternate delivery points are solely for Buyer's convenience, increase shipping charges shall be for Buyer's account.

Unless otherwise specified, each shipment hereunder will be applied to the oldest open contract between Buyer and Seller.

Buyer reserves the right to apply off-grade grain at market difference without first notifying Seller.

Buyer's performance hereunder, or any delay in such performance, including the acceptance of deliveries of grain on the date or dates specified, shall be excused where such failure to perform or delay is attributable to any cause or reason beyond Buyer's control, including without limitation lack of available storage space, equipment breakdown, labor trouble, governmental regulations, transportation difficulties, embargoes, civil disturbances, acts of God, or any other causes of the like or different character beyond Buyer's control.

This Contract is intended by the parties as a final expression of their agreement and is intended also as a complete and exclusive statement of the terms and conditions of their agreement. This Contract is limited to the terms and conditions stated herein, which terms and conditions shall prevail insofar as they might in any way conflict with any terms or conditions of Seller's confirmation.

There are hereby incorporated herein by reference the respective Equal Opportunity Clauses set forth in 41 C.F.R. para. 60-1.4 (a), 41 C.F.R. para. 60-250.4 and 41 C.F.R. para. 60-741.4 to extent the incorporation thereof is required by or necessary for compliance with applicable federal laws, regulations or orders. As used in such clauses, "contractor" shall mean the Seller hereunder. Unless otherwise exempt, this Purchase Order incorporates by reference the EEO Clause contained in 41 C.F.R. Sections 60-1.4, 60-741.5, and 60-250.5.

CONTROVERSIES: Controversies and/or other disagreements between Buyer and Seller arising under this Contract shall be settled by arbitration which shall be a condition precedent to any right of legal action that either Buyer or Seller may have against the other party. Any arbitration shall be in accordance with the rules of the National Grain and Feed Association [NGFA]. At the time notice of arbitration is served by either Buyer or Seller upon the other, (I) if either is a member of NGFA, the NGFA Arbitration Committee shall serve as the arbitrator; (ii) if neither is a member of the NGFA, the American Arbitration Association shall serve as the arbitrator.

# GAVILON ⎀

# Gavilon Grain, LLC

PINE BLUFF AR
509 ISLAND HARBOR MARINA RD
PINE BLUFF, AR 71602
870/419-7008

| | | |
|---|---|---|
| **Our Number:** | | **6055233** |
| **PRICED** | | **Purchase** |
| Contract Date: | | 3/8/2018 |

|   S   |   | | |
|---|---|---|---|
| E | BROCATO & UNGER FARMS | Customer No. | 0000367047 |
| L | P.O. BOX 96 | Payment Terms: | |
| L | | Broker: | |
| E | | Broker No.: | |
| R | MARVELL        AR        72366 | Delivery Terms: | DLV PINE BLUFF |

SELLER AGREES TO AND CONFIRMS THE SALE OF THE FOLLOWING DESCRIBED COMMODITIES TO GAVILON GRAIN, LLC (BUYER) SUBJECT TO THE TERMS AND CONDITIONS STATED ON THE FACE AND BACK THEREOF. FAILURE TO ADVISE GAVILON GRAIN, LLC IMMEDIATELY BY WIRE OF ANY DISCREPANCY, OBJECTION TO OR DISAGREEMENT WITH SUCH TERMS AND CONDITIONS SHALL BE AN ACCEPTANCE THEREOF.

**COMMODITY: #1YSB  YELLOW SOYBEANS**

**QUANTITY:    20,000.00        BU**

| | |
|---|---|
| WEIGHTS: | DESTINATION |
| GRADES: | DESTINATION |
| TRANSPORTATION: | TRUCK |
| REFERENCE: | |

| Status | Delivery Dates | Schedule Price | Futures Month | Futures Price | Basis Price | BU Priced |
|---|---|---|---|---|---|---|
| Priced | 9/1/2018 - 9/30/2018 | $10.27000 | Nov-18 | $10.40000 | -$0.13000 | 20,000.00 |

*Done*

| Buyer's scale of discounts at time of delivery to apply. Rules to apply: NGFA | **Total Contracted BUSHELS** | **20,000.00** |
|---|---|---|

BUYER OBJECTS TO THE INCLUSION OF ANY DIFFERENT OR ADDITIONAL TERMS PROPOSED BY SELLER. BUYER'S SCHEDULE OF DISCOUNTS TO APPLY. SELLER GUARANTEES GRAIN U.S. GROWN. IF PRICE OF GRAIN IS ON A PREMIUM BASIS, CONTRACT TO BE PRICED OR SPREAD PRIOR TO THE LAST TRADING DAY PRECEDING THE FIRST DELIVERY DAY OF THE FUTURES CONTRACT.

Confirmation Acknowledged *Brocato + Unger Farms*        Gavilon Grain, LLC

By: *Andy Britlett*        *3-15-18*        *SY*        *3-8-18*

BROCATO & UNGER FARMS        Date        SHANE YOUNG        Date

**PLEASE SIGN ONE COPY AND RETURN TO ABOVE ADDRESS.**

## TERMS AND CONDITIONS

Except as modified or limited by the terms and conditions stated herein, the Contract shall be governed by and construed in accordance with the applicable rules and regulations of the exchange, board or association designated on the face hereof, or, if none is designated or Seller is not a member of said exchange, board, or association, then the applicable trade rules of the National Grain and Feed Association in effect on the date hereof, and, to the extent not inconsistent therewith, the applicable provisions of the Uniform Commercial Code.

Seller warrants to Buyer that all grain sold and delivered hereunder will be of good, sound, dry and merchantable quality in accordance with the grade specified herein; that it will have been grown in the Continental United States unless a non-United States grown clause has been made a part of this Contract and so stated on the face hereof; that it will not be adulterated or misbranded within the meaning of the Federal Food, Drug and Cosmetic Act, nor be a commodity which may not, under the provisions of Section 404 or 505 of the Act, be introduced into interstate commerce; that neither any such grain nor the shipment thereof will be in violation of or subject to penalty, seizure or lien under any other federal, state or local law, ordinance regulation quota or order, and all grain sold hereunder will be delivered to Buyer free and clear of any and all liens, encumbrances, security interests, claims and penalties of any kind and nature.

In the event that a party hereto (the "Defaulting Party") becomes insolvent, or suffers or consents to or applies for the appointment of a receiver, trustee, custodian or liquidator of itself or any of its property, or generally fails to pay its debts as they become due, or makes a general assignment for the benefit of creditors, or files a voluntary petition in bankruptcy, or seeks reorganization, in order to effect a plan or other arrangement with creditors or any other relief under the Bankruptcy Code, Title 11 of the United States Code, as amended or recodified from time to time, or under any state or federal law granting relief to debtors then the other party (the "Non-defaulting Party") may (i) immediately cancel this Contract and all other Contracts between the parties hereto, (ii) liquidate such cancelled Contracts in a commercially reasonable manner, and (iii) aggregate such liquidated amounts into a single liquidated settlement amount (the "Settlement Amount") due, which shall be due and payable two (2) business days after written notice by the Non-defaulting Party. In addition, the Non-defaulting Party may set-off any amounts owed by the Defaulting Party to the Non-defaulting Party under any other agreements between the parties against any Settlement Amount owed by the Non-defaulting Party to the Defaulting Party hereunder.

The parties agree that each of them is a forward contract merchant as set forth in 11 U.S.C. Section 101(25). The parties also agree that this Contract and any other commodity contract between the parties are all forward contracts as defined in 11 U.S.C. Section 101(25). The payments and transfers described herein shall constitute "Settlement Payments" or "Margin Payments" as set forth in 11 U.S.C. Sections 101(51A) and (38).

Each Party consents to the recording of all telephone conversations between its representative and the representatives of the other Party.

This Contract is made on the basis of freight rates in effect on the date hereof. Any increase in freight rates taking effect before the full performance of this Contract shall be for the account of Seller unless otherwise adjusted and agreed upon between the parties at the time of the affected shipment.

All shipments of grain hereunder shall be made by Seller to the place of delivery designated herein. Buyer may subsequently designate any reasonable alternate place of delivery to facilitate Seller's performance of this Contract but shall have no obligation to do so. Any increased shipping charges incurred under this provision shall be for Seller's account and any reductions in shipping charges shall be for Buyer's account; provided however, if the designated alternate delivery points are solely for Buyer's convenience, increase shipping charges shall be for Buyer's account.

Unless otherwise specified, each shipment hereunder will be applied to the oldest open contract between Buyer and Seller.

Buyer reserves the right to apply off-grade grain at market difference without first notifying Seller.

Buyer's performance hereunder, or any delay in such performance, including the acceptance of deliveries of grain on the date or dates specified, shall be excused where such failure to perform or delay is attributable to any cause or reason beyond Buyer's control, including without limitation lack of available storage space, equipment breakdown, labor trouble, governmental regulations, transportation difficulties, embargoes, civil disturbances, acts of God, or any other causes of the like or different character beyond Buyer's control.

This Contract is intended by the parties as a final expression of their agreement and is intended also as a complete and exclusive statement of the terms and conditions of their agreement. This Contract is limited to the terms and conditions stated herein, which terms and conditions shall prevail insofar as they might in any way conflict with any terms or conditions of Seller's confirmation.

There are hereby incorporated herein by reference the respective Equal Opportunity Clauses set forth in 41 C.F.R. para. 60-1.4 (a), 41 C.F.R. para. 60-250.4 and 41 C.F.R. para. 60-741.4 to extent the incorporation thereof is required by or necessary for compliance with applicable federal laws, regulations or orders. As used in such clauses, "contractor" shall mean the Seller hereunder. Unless otherwise exempt, this Purchase Order incorporates by reference the EEO Clause contained in 41 C.F.R. Sections 60-1.4, 60-741.5, and 60-250.5.

CONTROVERSIES: Controversies and/or other disagreements between Buyer and Seller arising under this Contract shall be settled by arbitration which shall be a condition precedent to any right of legal action that either Buyer or Seller may have against the other party. Any arbitration shall be in accordance with the rules of the National Grain and Feed Association [NGFA]. At the time notice of arbitration is served by either Buyer or Seller upon the other, (I) if either is a member of NGFA, the NGFA Arbitration Committee shall serve as the arbitrator; (ii) if neither is a member of the NGFA, the American Arbitration Association shall serve as the arbitrator.

# GAVILON ⌥  Gavilon Grain, LLC

PINE BLUFF AR
509 ISLAND HARBOR MARINA RD
PINE BLUFF, AR 71602
870/419-7008

| | |
|---|---|
| **Our Number:** | **6052408** |
| **FUTURE ONLY-HTA** | **Purchase** |
| **Contract Date:** | **1/30/2018** |

S
E  BROCATO & UNGER FARMS
L  P.O. BOX 96
L
E
R  MARVELL   AR   72366

| | |
|---|---|
| Customer No. | 0000367047 |
| Payment Terms: | |
| Broker: | |
| Broker No.: | |
| Delivery Terms: | DLV PINE BLUFF |

SELLER AGREES TO AND CONFIRMS THE SALE OF THE FOLLOWING DESCRIBED COMMODITIES TO GAVILON GRAIN, LLC (BUYER) SUBJECT TO THE TERMS AND CONDITIONS STATED ON THE FACE AND BACK THEREOF. FAILURE TO ADVISE GAVILON GRAIN, LLC IMMEDIATELY BY WIRE OF ANY DISCREPANCY, OBJECTION TO OR DISAGREEMENT WITH SUCH TERMS AND CONDITIONS SHALL BE AN ACCEPTANCE THEREOF.

**COMMODITY: #1YSB YELLOW SOYBEANS**

**QUANTITY:   25,000.00       BU**

| | |
|---|---|
| WEIGHTS: | DESTINATION |
| GRADES: | DESTINATION |
| TRANSPORTATION: | TRUCK |
| REFERENCE: | |
| MARKET REGION: | PINE BLUFF AR |

| Status | Delivery Dates | Schedule Price | Futures Month | Futures Price | Other Fees | BU Scheduled |
|---|---|---|---|---|---|---|
| Unpriced | 8/20/2018 - 9/14/2018 | $0.00000 | Nov-18 | $10.16000 | -$0.05000 | 25,000.00 |

| | |
|---|---|
| Buyer's scale of discounts at time of delivery to apply. | **Total Contracted BUSHELS        25,000.00** |
| Rules to apply: NGFA | **TO BE PRICED DURING AN ACTIVE SESSION OF THE APPLICABLE EXCHANGE (CBOT/KBOT/MGE) PRIOR TO THE SECOND TO LAST TRADING DAY PRECEDING THE FIRST NOTICE DAY** |

FUTURES FIRST CONTRACT HTA FEE -.05
BASIS TO BE SET BEFORE DELIVERY

BUYER OBJECTS TO THE INCLUSION OF ANY DIFFERENT OR ADDITIONAL TERMS PROPOSED BY SELLER. BUYER'S SCHEDULE OF DISCOUNTS TO APPLY. SELLER GUARANTEES GRAIN U.S. GROWN. IF PRICE OF GRAIN IS ON A PREMIUM BASIS, CONTRACT TO BE PRICED OR SPREAD PRIOR TO THE LAST TRADING DAY PRECEDING THE FIRST DELIVERY DAY OF THE FUTURES CONTRACT.

Confirmation Acknowledged:                          Gavilon Grain, LLC

_____                    _____        1-30-18
BROCATO & UNGER FARMS        Date            SHANE YOUNG              Date
PLEASE SIGN ONE COPY AND RETURN TO ABOVE ADDRESS.

# TERMS AND CONDITIONS

Except as modified or limited by the terms and conditions stated herein, the Contract shall be governed by and construed in accordance with the applicable rules and regulations of the exchange, board or association designated on the face hereof, or, if none is designated or Seller is not a member of said exchange, board, or association, then the applicable trade rules of the National Grain and Feed Association in effect on the date hereof, and, to the extent not inconsistent therewith, the applicable provisions of the Uniform Commercial Code.

Seller warrants to Buyer that all grain sold and delivered hereunder will be of good, sound, dry and merchantable quality in accordance with the grade specified herein; that it will have been grown in the Continental United States unless a non-United States grown clause has been made a part of this Contract and so stated on the face hereof; that it will not be adulterated or misbranded within the meaning of the Federal Food, Drug and Cosmetic Act, nor be a commodity which may not, under the provisions of Section 404 or 505 of the Act, be introduced into interstate commerce; that neither any such grain nor the shipment thereof will be in violation of or subject to penalty, seizure or lien under any other federal, state or local law, ordinance regulation quota or order, and all grain sold hereunder will be delivered to Buyer free and clear of any and all liens, encumbrances, security interests, claims and penalties of any kind and nature.

In the event that a party hereto (the "Defaulting Party") becomes insolvent, or suffers or consents to or applies for the appointment of a receiver, trustee, custodian or liquidator of itself or any of its property, or generally fails to pay its debts as they become due, or makes a general assignment for the benefit of creditors, or files a voluntary petition in bankruptcy, or seeks reorganization, in order to effect a plan or other arrangement with creditors or any other relief under the Bankruptcy Code, Title 11 of the United States Code, as amended or recodified from time to time, or under any state or federal law granting relief to debtors then the other party (the "Non-defaulting Party") may (i) immediately cancel this Contract and all other Contracts between the parties hereto, (ii) liquidate such cancelled Contracts in a commercially reasonable manner, and (iii) aggregate such liquidated amounts into a single liquidated settlement amount (the "Settlement Amount") due, which shall be due and payable two (2) business days after written notice by the Non-defaulting Party. In addition, the Non-defaulting Party may set-off any amounts owed by the Defaulting Party to the Non-defaulting Party under any other agreements between the parties against any Settlement Amount owed by the Non-defaulting Party to the Defaulting Party hereunder.

The parties agree that each of them is a forward contract merchant as set forth in 11 U.S.C. Section 101(25). The parties also agree that this Contract and any other commodity contract between the parties are all forward contracts as defined in 11 U.S.C. Section 101(25). The payments and transfers described herein shall constitute "Settlement Payments" or "Margin Payments" as set forth in 11 U.S.C. Sections 101(51A) and (38).

Each Party consents to the recording of all telephone conversations between its representative and the representatives of the other Party.

This Contract is made on the basis of freight rates in effect on the date hereof. Any increase in freight rates taking effect before the full performance of this Contract shall be for the account of Seller unless otherwise adjusted and agreed upon between the parties at the time of the affected shipment.

All shipments of grain hereunder shall be made by Seller to the place of delivery designated herein. Buyer may subsequently designate any reasonable alternate place of delivery to facilitate Seller's performance of this Contract but shall have no obligation to do so. Any increased shipping charges incurred under this provision shall be for Seller's account and any reductions in shipping charges shall be for Buyer's account; provided however, if the designated alternate delivery points are solely for Buyer's convenience, increase shipping charges shall be for Buyer's account.

Unless otherwise specified, each shipment hereunder will be applied to the oldest open contract between Buyer and Seller.

Buyer reserves the right to apply off-grade grain at market difference without first notifying Seller.

Buyer's performance hereunder, or any delay in such performance, including the acceptance of deliveries of grain on the date or dates specified, shall be excused where such failure to perform or delay is attributable to any cause or reason beyond Buyer's control, including without limitation lack of available storage space, equipment breakdown, labor trouble, governmental regulations, transportation difficulties, embargoes, civil disturbances, acts of God, or any other causes of the like or different character beyond Buyer's control.

This Contract is intended by the parties as a final expression of their agreement and is intended also as a complete and exclusive statement of the terms and conditions of their agreement. This Contract is limited to the terms and conditions stated herein, which terms and conditions shall prevail insofar as they might in any way conflict with any terms or conditions of Seller's confirmation.

There are hereby incorporated herein by reference the respective Equal Opportunity Clauses set forth in 41 C.F.R. para. 60-1.4 (a), 41 C.F.R. para. 60-250.4 and 41 C.F.R. para. 60-741.4 to extent the incorporation thereof is required by or necessary for compliance with applicable federal laws, regulations or orders. As used in such clauses, "contractor" shall mean the Seller hereunder. Unless otherwise exempt, this Purchase Order incorporates by reference the EEO Clause contained in 41 C.F.R. Sections 60-1.4, 60-741.5, and 60-250.5.

CONTROVERSIES: Controversies and/or other disagreements between Buyer and Seller arising under this Contract shall be settled by arbitration which shall be a condition precedent to any right of legal action that either Buyer or Seller may have against the other party. Any arbitration shall be in accordance with the rules of the National Grain and Feed Association [NGFA]. At the time notice of arbitration is served by either Buyer or Seller upon the other, (I) if either is a member of NGFA, the NGFA Arbitration Committee shall serve as the arbitrator; (ii) if neither is a member of the NGFA, the American Arbitration Association shall serve as the arbitrator.

# GAVILON 🦅    Gavilon Grain, LLC

| PINE BLUFF AR | **CONFIRMATION OF PRICING AND/OR ORIGINAL CONTRACT AMENDMENT** | |
|---|---|---|

PINE BLUFF AR
509 ISLAND HARBOR MARINA RD
PINE BLUFF, AR 71602
870/419-7008

**CONFIRMATION OF PRICING
AND/OR ORIGINAL CONTRACT
AMENDMENT**

**Our Number:** 6052408
**FUTURE ONLY-HTA**    **Purchase**

**Contract Date:** 1/30/2018
**Customer No.** 0000367047

S
E    BROCATO & UNGER FARMS
L    P.O. BOX 96
L
E
R    MARVELL    AR    72366

Broker:
Broker No.:
**Delivery Terms:**    DLV PINE BLUFF

THIS CONFIRMATION COVERS OUR UNDERSTANDING OF PRICING, AND/OR, OF AMENDMENT(S) IN PRIOR STIPULATIONS, TERMS, OR CONDITIONS OF THE CONTRACT SO DESIGNATED. THE NEW TERMS ARE TO BE CONSIDERED AS PART OF THE ORIGINAL CONTRACT AND ARE MADE WITH THE BEST INTERESTS OF BOTH PARTIES IN MIND. FAILURE TO ADVISE GAVILON GRAIN, LLC IMMEDIATELY BY WIRE OF ANY DISCREPANCY, OBJECTION TO OR DISAGREEMENT WITH SUCH TERMS AND CONDITIONS SHALL BE AN ACCEPTANCE THEREOF.

**COMMODITY: #1YSB YELLOW SOYBEANS**
**TOTAL QUANTITY:**        25,000.00
**PRICED QUANTITY:**       25,000.00
**UNPRICED QUANTITY:**          0.00

WEIGHTS:                     DESTINATION
GRADES:                      DESTINATION
TRANSPORTATION:              TRUCK
REFERENCE:

| Status | Pricing Date | Delivery Dates | Schedule Price | Futures Month | Futures Price | Basis Price | BU Unpriced | BU Priced |
|---|---|---|---|---|---|---|---|---|
| Priced | 10/6/2018 | 8/20/2018 - 9/14/2018 | $9.47000 | Nov-18 | $10.16000 | -$0.69000 | 0.00 | 25,000.00 |

| Buyer's scale of discounts at time of delivery to apply. Rules to apply: NGFA | **Total Priced BUSHELS** | **25,000.00** |
|---|---|---|

FUTURES FIRST CONTRACT HTA FEE -.05
BASIS TO BE SET BEFORE DELIVERY

BUYER OBJECTS TO THE INCLUSION OF ANY DIFFERENT OR ADDITIONAL TERMS PROPOSED BY SELLER.

Confirmation Acknowledged:        Gavilon Grain, LLC

Signer2 _____ Date2_____    Signer1 _____ Date1 90/6/18
BROCATO & UNGER FARMS        ROBERT RHODES
**PLEASE SIGN ONE COPY AND RETURN TO ABOVE ADDRESS.**

## TERMS AND CONDITIONS

Except as modified or limited by the terms and conditions stated herein, the Contract shall be governed by and construed in accordance with the applicable rules and regulations of the exchange, board or association designated on the face hereof, or, if none is designated or Seller is not a member of said exchange, board, or association, then the applicable trade rules of the National Grain and Feed Association in effect on the date hereof, and, to the extent not inconsistent therewith, the applicable provisions of the Uniform Commercial Code.

Seller warrants to Buyer that all grain sold and delivered hereunder will be of good, sound, dry and merchantable quality in accordance with the grade specified herein; that it will have been grown in the Continental United States unless a non-United States grown clause has been made a part of this Contract and so stated on the face hereof; that it will not be adulterated or misbranded within the meaning of the Federal Food, Drug and Cosmetic Act, nor be a commodity which may not, under the provisions of Section 404 or 505 of the Act, be introduced into interstate commerce; that neither any such grain nor the shipment thereof will be in violation of or subject to penalty, seizure or lien under any other federal, state or local law, ordinance regulation quota or order, and all grain sold hereunder will be delivered to Buyer free and clear of any and all liens, encumbrances, security interests, claims and penalties of any kind and nature.

In the event that a party hereto (the "Defaulting Party") becomes insolvent, or suffers or consents to or applies for the appointment of a receiver, trustee, custodian or liquidator of itself or any of its property, or generally fails to pay its debts as they become due, or makes a general assignment for the benefit of creditors, or files a voluntary petition in bankruptcy, or seeks reorganization, in order to effect a plan or other arrangement with creditors or any other relief under the Bankruptcy Code, Title 11 of the United States Code, as amended or recodified from time to time, or under any state or federal law granting relief to debtors then the other party (the "Non-defaulting Party") may (i) immediately cancel this Contract and all other Contracts between the parties hereto, (ii) liquidate such cancelled Contracts in a commercially reasonable manner, and (iii) aggregate such liquidated amounts into a single liquidated settlement amount (the "Settlement Amount") due, which shall be due and payable two (2) business days after written notice by the Non-defaulting Party. In addition, the Non-defaulting Party may set-off any amounts owed by the Defaulting Party to the Non-defaulting Party under any other agreements between the parties against any Settlement Amount owed by the Non-defaulting Party to the Defaulting Party hereunder.

The parties agree that each of them is a forward contract merchant as set forth in 11 U.S.C. Section 101(25). The parties also agree that this Contract and any other commodity contract between the parties are all forward contracts as defined in 11 U.S.C. Section 101(25). The payments and transfers described herein shall constitute "Settlement Payments" or "Margin Payments" as set forth in 11 U.S.C. Sections 101(51A) and (38).

Each Party consents to the recording of all telephone conversations between its representative and the representatives of the other Party.

This Contract is made on the basis of freight rates in effect on the date hereof. Any increase in freight rates taking effect before the full performance of this Contract shall be for the account of Seller unless otherwise adjusted and agreed upon between the parties at the time of the affected shipment.

All shipments of grain hereunder shall be made by Seller to the place of delivery designated herein. Buyer may subsequently designate any reasonable alternate place of delivery to facilitate Seller's performance of this Contract but shall have no obligation to do so. Any increased shipping charges incurred under this provision shall be for Seller's account and any reductions in shipping charges shall be for Buyer's account; provided however, if the designated alternate delivery points are solely for Buyer's convenience, increase shipping charges shall be for Buyer's account.

Unless otherwise specified, each shipment hereunder will be applied to the oldest open contract between Buyer and Seller.

Buyer reserves the right to apply off-grade grain at market difference without first notifying Seller.

Buyer's performance hereunder, or any delay in such performance, including the acceptance of deliveries of grain on the date or dates specified, shall be excused where such failure to perform or delay is attributable to any cause or reason beyond Buyer's control, including without limitation lack of available storage space, equipment breakdown, labor trouble, governmental regulations, transportation difficulties, embargoes, civil disturbances, acts of God, or any other causes of the like or different character beyond Buyer's control.

This Contract is intended by the parties as a final expression of their agreement and is intended also as a complete and exclusive statement of the terms and conditions of their agreement. This Contract is limited to the terms and conditions stated herein, which terms and conditions shall prevail insofar as they might in any way conflict with any terms or conditions of Seller's confirmation.

There are hereby incorporated herein by reference the respective Equal Opportunity Clauses set forth in 41 C.F.R. para. 60-1.4 (a), 41 C.F.R. para. 60-250.4 and 41 C.F.R. para. 60-741.4 to extent the incorporation thereof is required by or necessary for compliance with applicable federal laws, regulations or orders. As used in such clauses, "contractor" shall mean the Seller hereunder. Unless otherwise exempt, this Purchase Order incorporates by reference the EEO Clause contained in 41 C.F.R. Sections 60-1.4, 60-741.5, and 60-250.5.

CONTROVERSIES: Controversies and/or other disagreements between Buyer and Seller arising under this Contract shall be settled by arbitration which shall be a condition precedent to any right of legal action that either Buyer or Seller may have against the other party. Any arbitration shall be in accordance with the rules of the National Grain and Feed Association [NGFA]. At the time notice of arbitration is served by either Buyer or Seller upon the other, (I) if either is a member of NGFA, the NGFA Arbitration Committee shall serve as the arbitrator; (ii) if neither is a member of the NGFA, the American Arbitration Association shall serve as the arbitrator.

# GAVILON ⍋

# Gavilon Grain, LLC

PINE BLUFF AR
509 ISLAND HARBOR MARINA RD
PINE BLUFF, AR 71602
870/419-7008

| | |
|---|---|
| **Our Number:** | **6055181** |
| **PRICED** | **Purchase** |
| Contract Date: | **12/5/2017** |

|   |   |
|---|---|
| Customer No. | 0000306307 |
| Payment Terms: | |
| Broker: | |
| Broker No.: | |
| Delivery Terms: | DLV PINE BLUFF |

S
E  PHARR FARMS
L   2946 FLORENCE RD
L
E  MONTICELLO      AR     71655
R

SELLER AGREES TO AND CONFIRMS THE SALE OF THE FOLLOWING DESCRIBED COMMODITIES TO GAVILON GRAIN, LLC (BUYER) SUBJECT TO THE TERMS AND CONDITIONS STATED ON THE FACE AND BACK THEREOF. FAILURE TO ADVISE GAVILON GRAIN, LLC IMMEDIATELY BY WIRE OF ANY DISCREPANCY, OBJECTION TO OR DISAGREEMENT WITH SUCH TERMS AND CONDITIONS SHALL BE AN ACCEPTANCE THEREOF.

**COMMODITY: #1YSB  YELLOW SOYBEANS**

**QUANTITY:     10,000.00        BU**

| | |
|---|---|
| WEIGHTS: | DESTINATION |
| GRADES: | DESTINATION |
| TRANSPORTATION: | TRUCK |
| REFERENCE: | |

| Status | Delivery Dates | Schedule Price | Futures Month | Futures Price | Basis Price | BU Priced |
|---|---|---|---|---|---|---|
| Priced | 9/1/2018 - 9/30/2018 | $10.00000 | Nov-18 | $10.20000 | -$0.20000 | 10,000.00 |

Buyer's scale of discounts at time of delivery to apply.
Rules to apply: NGFA

**Total Contracted  BUSHELS         10,000.00**

## EXHIBIT
# E

BUYER OBJECTS TO THE INCLUSION OF ANY DIFFERENT OR ADDITIONAL TERMS PROPOSED BY SELLER. BUYER'S SCHEDULE OF DISCOUNTS TO APPLY. SELLER GUARANTEES GRAIN U.S. GROWN. IF PRICE OF GRAIN IS ON A PREMIUM BASIS, CONTRACT TO BE PRICED OR SPREAD PRIOR TO THE LAST TRADING DAY PRECEDING THE FIRST DELIVERY DAY OF THE FUTURES CONTRACT.

Confirmation Acknowledged                                                     Gavilon Grain, LLC

_____  12/13/17          _____  12-05-17
PHARR FARMS                    Date                 SHANE YOUNG               Date

**PLEASE SIGN ONE COPY AND RETURN TO ABOVE ADDRESS.**

~~Seller warrants to Buyer that~~ CADD-DOCS JM Contract-Final 06/29/11

grade specified herein ~~that~~ will ~~have been grown in the~~ Continental United States unless ~~a~~ Non-United States Grown clause has been made a part of this Contract and so stated on the face hereof; that it will not be adulterated or misbranded within the meaning of the Federal Food, Drug and Cosmetic Act, nor be a commodity which may not, under the provisions of Section 404 or 505 of the Act, be introduced into interstate commerce; that neither any such grain nor the shipment thereof will be in violation of or subject to penalty, seizure or lien under any other federal, state or local law, ordinance regulation quota or order, and all grain sold hereunder will be delivered to Buyer free and clear of any and all liens, encumbrances, security interests, claims and penalties of any kind and nature.

In the event that a party hereto (the "Defaulting Party") becomes insolvent, or suffers or consents to or applies for the appointment of a receiver, trustee, custodian or liquidator of itself or any of its property, or generally fails to pay its debts as they become due, or makes a general assignment for the benefit of creditors, or files a voluntary petition in bankruptcy, or seeks reorganization, in order to effect a plan or other arrangement with creditors or any other relief under the Bankruptcy Code, Title 11 of the United States Code, as amended or recodified from time to time, or under any state or federal law granting relief to debtors then the other party (the "Non-defaulting Party") may (i) immediately cancel this Contract and all other Contracts between the parties hereto, (ii) liquidate such cancelled Contracts in a commercially reasonable manner, and (iii) aggregate such liquidated amounts into a single liquidated settlement amount (the "Settlement Amount") due, which shall be due and payable two (2) business days after written notice by the Non-defaulting Party. In addition, the Non-defaulting Party may set-off any amounts owed by the Defaulting Party to the Non-defaulting Party under any other agreements between the parties against any Settlement Amount owed by the Non-defaulting Party to the Defaulting Party hereunder.

The parties agree that each of them is a forward contract merchant as set forth in 11 U.S.C. Section 101(25). The parties also agree that this Contract and any other commodity contract between the parties are all forward contracts as defined in 11 U.S.C. Section 101(25). The payments and transfers described herein shall constitute "Settlement Payments" or "Margin Payments" as set forth in 11 U.S.C. Sections 101(51A) and (38).

Each Party consents to the recording of all telephone conversations between its representative and the representatives of the other Party.

This Contract is made on the basis of freight rates in effect on the date hereof. Any increase in freight rates taking effect before the full performance of this Contract shall be for the account of Seller unless otherwise adjusted and agreed upon between the parties at the time of the affected shipment.

All shipments of grain hereunder shall be made by Seller to the place of delivery designated herein. Buyer may subsequently designate any reasonable alternate place of delivery to facilitate Seller's performance of this Contract but shall have no obligation to do so. Any increased shipping charges incurred under this provision shall be for Seller's account and any reductions in shipping charges shall be for Buyer's account; provided however, if the designated alternate delivery points are solely for Buyer's convenience, increase shipping charges shall be for Buyer's account.

Unless otherwise specified, each shipment hereunder will be applied to the oldest open contract between Buyer and Seller.

Buyer reserves the right to apply off-grade grain at market difference without first notifying Seller.

Buyer's performance hereunder, or any delay in such performance, including the acceptance of deliveries of grain on the date or dates specified, shall be excused where such failure to perform or delay is attributable to any cause or reason beyond Buyer's control, including without limitation lack of available storage space, equipment breakdown, labor trouble, governmental regulations, transportation difficulties, embargoes, civil disturbances, acts of God, or any other causes of the like or different character beyond Buyer's control.

This Contract is intended by the parties as a final expression of their agreement and is intended also as a complete and exclusive statement of the terms and conditions of their agreement. This Contract is limited to the terms and conditions stated herein, which terms and conditions shall prevail insofar as they might in any way conflict with any terms or conditions of Seller's confirmation.

There are hereby incorporated herein by reference the respective Equal Opportunity Clauses set forth in 41 C.F.R. para. 60-1.4 (a), 41 C.F.R. para. 60-250.4 and 41 C.F.R. para. 60-741.4 to extent the incorporation thereof is required by or necessary for compliance with applicable federal laws, regulations or orders. As used in such clauses, "contractor" shall mean the Seller hereunder. Unless otherwise exempt, this Purchase Order incorporates by reference the EEO Clause contained in 41 C.F.R. Sections 60-1.4, 60-741.5, and 60-250.5.

CONTROVERSIES: Controversies and/or disagreements between Buyer and Seller arising under this Contract shall be settled by arbitration which shall be a condition precedent to any right of legal action that either Buyer or Seller may have against the other party. Any arbitration shall be in accordance with the rules of the National Grain and Feed Association [NGFA]. At the time notice of arbitration is served by either Buyer or Seller upon the other, (I) if either is a member of NGFA, the NGFA Arbitration Committee shall serve as the arbitrator; (ii) if neither is a member of the NGFA, the American Arbitration Association shall serve as the arbitrator.

# GAVILON 〒

# Gavilon Grain, LLC

PINE BLUFF AR
509 ISLAND HARBOR MARINA RD
PINE BLUFF, AR 71602
870/419-7008

| | |
|---|---|
| **Our Number:** | **6052422** |
| **FUTURE ONLY-HTA** | **Purchase** |
| Contract Date: | 2/20/2018 |

S
E  C & D FARMS
L  151 COTTONDALE RD
L
E
R  PINE BLUFF      AR      71601

| | |
|---|---|
| Customer No. | 0000240927 |
| Payment Terms: | |
| Broker: | |
| Broker No.: | |
| Delivery Terms: | DLV PINE BLUFF |

SELLER AGREES TO AND CONFIRMS THE SALE OF THE FOLLOWING DESCRIBED COMMODITIES TO GAVILON GRAIN, LLC (BUYER) SUBJECT TO THE TERMS AND CONDITIONS STATED ON THE FACE AND BACK THEREOF. FAILURE TO ADVISE GAVILON GRAIN, LLC IMMEDIATELY BY WIRE OF ANY DISCREPANCY, OBJECTION TO OR DISAGREEMENT WITH SUCH TERMS AND CONDITIONS SHALL BE AN ACCEPTANCE THEREOF.

**COMMODITY: #1YSB  YELLOW SOYBEANS**

**QUANTITY:   15,000.00          BU**

| | |
|---|---|
| WEIGHTS: | DESTINATION |
| GRADES: | DESTINATION |
| TRANSPORTATION: | TRUCK |
| REFERENCE: | |
| MARKET REGION: | PINE BLUFF AR |

| Status | Delivery Dates | Schedule Price | Futures Month | Futures Price | Other Fees | BU Scheduled |
|---|---|---|---|---|---|---|
| Unpriced | 9/1/2018 - 9/30/2018 | $0.00000 | Nov-18 | $10.18000 | -$0.03000 | 15,000.00 |

Buyer's scale of discounts at time of delivery to apply.
Rules to apply: NGFA

HTA FEE -.03
BASIS SET BEFORE DLV

*Dave*
**Total Contracted  BUSHELS          15,000.00**
TO BE PRICED DURING AN ACTIVE SESSION OF THE APPLICABLE EXCHANGE (CBOT/KBOT/MGE) PRIOR TO THE SECOND TO LAST TRADING DAY PRECEDING THE FIRST NOTICE DAY

## EXHIBIT
# F

BUYER OBJECTS TO THE INCLUSION OF ANY DIFFERENT OR ADDITIONAL TERMS PROPOSED BY SELLER. BUYER'S SCHEDULE OF DISCOUNTS TO APPLY. SELLER GUARANTEES GRAIN U.S. GROWN. IF PRICE OF GRAIN IS ON A PREMIUM BASIS, CONTRACT TO BE PRICED OR SPREAD PRIOR TO THE LAST TRADING DAY PRECEDING THE FIRST DELIVERY DAY OF THE FUTURES CONTRACT.

Confirmation Acknowledged:                                    Gavilon Grain, LLC

_____  2-22-18        _____  2-20-18
C & D FARMS              Date            SHANE YOUNG      Date

**PLEASE SIGN ONE COPY AND RETURN TO ABOVE ADDRESS.**

# TERMS AND CONDITIONS

Except as modified or limited by the terms and conditions stated herein, the Contract shall be governed by and construed in accordance with the applicable rules and regulations of the exchange, board or association designated on the face hereof, or, if none is designated or Seller is not a member of said exchange, board, or association, then the applicable trade rules of the National Grain and Feed Association in effect on the date hereof, and, to the extent not inconsistent therewith, the applicable provisions of the Uniform Commercial Code.

Seller warrants to Buyer that all grain sold and delivered hereunder will be of good, sound, dry and merchantable quality in accordance with the grade specified herein; that it will have been grown in the Continental United States unless a non-United States grown clause has been made a part of this Contract and so stated on the face hereof; that it will not be adulterated or misbranded within the meaning of the Federal Food, Drug and Cosmetic Act, nor be a commodity which may not, under the provisions of Section 404 or 505 of the Act, be introduced into interstate commerce; that neither any such grain nor the shipment thereof will be in violation of or subject to penalty, seizure or lien under any other federal, state or local law, ordinance regulation quota or order, and all grain sold hereunder will be delivered to Buyer free and clear of any and all liens, encumbrances, security interests, claims and penalties of any kind and nature.

In the event that a party hereto (the "Defaulting Party") becomes insolvent, or suffers or consents to or applies for the appointment of a receiver, trustee, custodian or liquidator of itself or any of its property, or generally fails to pay its debts as they become due, or makes a general assignment for the benefit of creditors, or files a voluntary petition in bankruptcy, or seeks reorganization, in order to effect a plan or other arrangement with creditors or any other relief under the Bankruptcy Code, Title 11 of the United States Code, as amended or recodified from time to time, or under any state or federal law granting relief to debtors then the other party (the "Non-defaulting Party") may (i) immediately cancel this Contract and all other Contracts between the parties hereto, (ii) liquidate such cancelled Contracts in a commercially reasonable manner, and (iii) aggregate such liquidated amounts into a single liquidated settlement amount (the "Settlement Amount") due, which shall be due and payable two (2) business days after written notice by the Non-defaulting Party. In addition, the Non-defaulting Party may set-off any amounts owed by the Defaulting Party to the Non-defaulting Party under any other agreements between the parties against any Settlement Amount owed by the Non-defaulting Party to the Defaulting Party hereunder.

The parties agree that each of them is a forward contract merchant as set forth in 11 U.S.C. Section 101(25). The parties also agree that this Contract and any other commodity contract between the parties are all forward contracts as defined in 11 U.S.C. Section 101(25). The payments and transfers described herein shall constitute "Settlement Payments" or "Margin Payments" as set forth in 11 U.S.C. Sections 101(51A) and (38).

Each Party consents to the recording of all telephone conversations between its representative and the representatives of the other Party.

This Contract is made on the basis of freight rates in effect on the date hereof. Any increase in freight rates taking effect before the full performance of this Contract shall be for the account of Seller unless otherwise adjusted and agreed upon between the parties at the time of the affected shipment.

All shipments of grain hereunder shall be made by Seller to the place of delivery designated herein. Buyer may subsequently designate any reasonable alternate place of delivery to facilitate Seller's performance of this Contract but shall have no obligation to do so. Any increased shipping charges incurred under this provision shall be for Seller's account and any reductions in shipping charges shall be for Buyer's account; provided however, if the designated alternate delivery points are solely for Buyer's convenience, increase shipping charges shall be for Buyer's account.

Unless otherwise specified, each shipment hereunder will be applied to the oldest open contract between Buyer and Seller.

Buyer reserves the right to apply off-grade grain at market difference without first notifying Seller.

Buyer's performance hereunder, or any delay in such performance, including the acceptance of deliveries of grain on the date or dates specified, shall be excused where such failure to perform or delay is attributable to any cause or reason beyond Buyer's control, including without limitation lack of available storage space, equipment breakdown, labor trouble, governmental regulations, transportation difficulties, embargoes, civil disturbances, acts of God, or any other causes of the like or different character beyond Buyer's control.

This Contract is intended by the parties as a final expression of their agreement and is intended also as a complete and exclusive statement of the terms and conditions of their agreement. This Contract is limited to the terms and conditions stated herein, which terms and conditions shall prevail insofar as they might in any way conflict with any terms or conditions of Seller's confirmation.

There are hereby incorporated herein by reference the respective Equal Opportunity Clauses set forth in 41 C.F.R. para. 60-1.4 (a), 41 C.F.R. para. 60-250.4 and 41 C.F.R. para. 60-741.4 to extent the incorporation thereof is required by or necessary for compliance with applicable federal laws, regulations or orders. As used in such clauses, "contractor" shall mean the Seller hereunder. Unless otherwise exempt, this Purchase Order incorporates by reference the EEO Clause contained in 41 C.F.R. Sections 60-1.4, 60-741.5, and 60-250.5.

CONTROVERSIES: Controversies and/or other disagreements between Buyer and Seller arising under this Contract shall be settled by arbitration which shall be a condition precedent to any right of legal action that either Buyer or Seller may have against the other party. Any arbitration shall be in accordance with the rules of the National Grain and Feed Association [NGFA]. At the time notice of arbitration is served by either Buyer or Seller upon the other, (I) if either is a member of NGFA, the NGFA Arbitration Committee shall serve as the arbitrator; (ii) if neither is a member of the NGFA, the American Arbitration Association shall serve as the arbitrator.

# GAVILON Ꮐ

# Gavilon Grain, LLC

PINE BLUFF AR
509 ISLAND HARBOR MARINA RD
PINE BLUFF, AR 71602
870/419-7008

| | |
|---|---|
| **Our Number:** | **6052425** |
| **FUTURE ONLY-HTA** | **Purchase** |
| Contract Date: | 3/7/2018 |

S
E C & D FARMS
L 151 COTTONDALE RD
L
E
R PINE BLUFF     AR     71601

| | |
|---|---|
| Customer No. | 0000240927 |
| Payment Terms: | |
| Broker: | |
| Broker No.: | |
| Delivery Terms: | DLV PINE BLUFF |

SELLER AGREES TO AND CONFIRMS THE SALE OF THE FOLLOWING DESCRIBED COMMODITIES TO GAVILON GRAIN, LLC (BUYER) SUBJECT TO THE TERMS AND CONDITIONS STATED ON THE FACE AND BACK THEREOF. FAILURE TO ADVISE GAVILON GRAIN, LLC IMMEDIATELY BY WIRE OF ANY DISCREPANCY, OBJECTION TO OR DISAGREEMENT WITH SUCH TERMS AND CONDITIONS SHALL BE AN ACCEPTANCE THEREOF.

**COMMODITY: #1YSB YELLOW SOYBEANS**

**QUANTITY:   30,000.00          BU**

| | |
|---|---|
| WEIGHTS: | DESTINATION |
| GRADES: | DESTINATION |
| TRANSPORTATION: | TRUCK |
| REFERENCE: | |
| MARKET REGION: | PINE BLUFF AR |

| Status | Delivery Dates | Schedule Price | Futures Month | Futures Price | Other Fees | BU Scheduled |
|---|---|---|---|---|---|---|
| Unpriced | 9/1/2018 - 9/30/2018 | $0.00000 | Nov-18 | $10.45000 | -$0.03000 | 30,000.00 |

Done

| | |
|---|---|
| Buyer's scale of discounts at time of delivery to apply. Rules to apply: NGFA | **Total Contracted BUSHELS          30,000.00** TO BE PRICED DURING AN ACTIVE SESSION OF THE APPLICABLE EXCHANGE (CBOT/KBOT/MGE) PRIOR TO THE SECOND TO LAST TRADING DAY PRECEDING THE FIRST NOTICE DAY |

HTA CONTRACT FEE -.03
BASIS MUST BE SET BEFORE DLV

BUYER OBJECTS TO THE INCLUSION OF ANY DIFFERENT OR ADDITIONAL TERMS PROPOSED BY SELLER. BUYER'S SCHEDULE OF DISCOUNTS TO APPLY. SELLER GUARANTEES GRAIN U.S. GROWN. IF PRICE OF GRAIN IS ON A PREMIUM BASIS, CONTRACT TO BE PRICED OR SPREAD PRIOR TO THE LAST TRADING DAY PRECEDING THE FIRST DELIVERY DAY OF THE FUTURES CONTRACT.

Confirmation Acknowledged:

_____                    Gavilon Grain, LLC
     C & D FARMS          Date                   SHANE YOUNG          3-7-18
                                                                              Date

**PLEASE SIGN ONE COPY AND RETURN TO ABOVE ADDRESS.**

## TERMS AND CONDITIONS

Except as modified or limited by the terms and conditions stated herein, the Contract shall be governed by and construed in accordance with the applicable rules and regulations of the exchange, board or association designated on the face hereof, or, if none is designated or Seller is not a member of said exchange, board, or association, then the applicable trade rules of the National Grain and Feed Association in effect on the date hereof, and, to the extent not inconsistent therewith, the applicable provisions of the Uniform Commercial Code.

Seller warrants to Buyer that all grain sold and delivered hereunder will be of good, sound, dry and merchantable quality in accordance with the grade specified herein; that it will have been grown in the Continental United States unless a non-United States grown clause has been made a part of this Contract and so stated on the face hereof; that it will not be adulterated or misbranded within the meaning of the Federal Food, Drug and Cosmetic Act, nor be a commodity which may not, under the provisions of Section 404 or 505 of the Act, be introduced into interstate commerce; that neither any such grain nor the shipment thereof will be in violation of or subject to penalty, seizure or lien under any other federal, state or local law, ordinance regulation quota or order, and all grain sold hereunder will be delivered to Buyer free and clear of any and all liens, encumbrances, security interests, claims and penalties of any kind and nature.

In the event that a party hereto (the "Defaulting Party") becomes insolvent, or suffers or consents to or applies for the appointment of a receiver, trustee, custodian or liquidator of itself or any of its property, or generally fails to pay its debts as they become due, or makes a general assignment for the benefit of creditors, or files a voluntary petition in bankruptcy, or seeks reorganization, in order to effect a plan or other arrangement with creditors or any other relief under the Bankruptcy Code, Title 11 of the United States Code, as amended or recodified from time to time, or under any state or federal law granting relief to debtors then the other party (the "Non-defaulting Party") may (i) immediately cancel this Contract and all other Contracts between the parties hereto, (ii) liquidate such cancelled Contracts in a commercially reasonable manner, and (iii) aggregate such liquidated amounts into a single liquidated settlement amount (the "Settlement Amount") due, which shall be due and payable two (2) business days after written notice by the Non-defaulting Party. In addition, the Non-defaulting Party may set-off any amounts owed by the Defaulting Party to the Non-defaulting Party under any other agreements between the parties against any Settlement Amount owed by the Non-defaulting Party to the Defaulting Party hereunder.

The parties agree that each of them is a forward contract merchant as set forth in 11 U.S.C. Section 101(25). The parties also agree that this Contract and any other commodity contract between the parties are all forward contracts as defined in 11 U.S.C. Section 101(25). The payments and transfers described herein shall constitute "Settlement Payments" or "Margin Payments" as set forth in 11 U.S.C. Sections 101(51A) and (38).

Each Party consents to the recording of all telephone conversations between its representative and the representatives of the other Party.

This Contract is made on the basis of freight rates in effect on the date hereof. Any increase in freight rates taking effect before the full performance of this Contract shall be for the account of Seller unless otherwise adjusted and agreed upon between the parties at the time of the affected shipment.

All shipments of grain hereunder shall be made by Seller to the place of delivery designated herein. Buyer may subsequently designate any reasonable alternate place of delivery to facilitate Seller's performance of this Contract but shall have no obligation to do so. Any increased shipping charges incurred under this provision shall be for Seller's account and any reductions in shipping charges shall be for Buyer's account; provided however, if the designated alternate delivery points are solely for Buyer's convenience, increase shipping charges shall be for Buyer's account.

Unless otherwise specified, each shipment hereunder will be applied to the oldest open contract between Buyer and Seller.

Buyer reserves the right to apply off-grade grain at market difference without first notifying Seller.

Buyer's performance hereunder, or any delay in such performance, including the acceptance of deliveries of grain on the date or dates specified, shall be excused where such failure to perform or delay is attributable to any cause or reason beyond Buyer's control, including without limitation lack of available storage space, equipment breakdown, labor trouble, governmental regulations, transportation difficulties, embargoes, civil disturbances, acts of God, or any other causes of the like or different character beyond Buyer's control.

This Contract is intended by the parties as a final expression of their agreement and is intended also as a complete and exclusive statement of the terms and conditions of their agreement. This Contract is limited to the terms and conditions stated herein, which terms and conditions shall prevail insofar as they might in any way conflict with any terms or conditions of Seller's confirmation.

There are hereby incorporated herein by reference the respective Equal Opportunity Clauses set forth in 41 C.F.R. para. 60-1.4 (a), 41 C.F.R. para. 60-250.4 and 41 C.F.R. para. 60-741.4 to extent the incorporation thereof is required by or necessary for compliance with applicable federal laws, regulations or orders. As used in such clauses, "contractor" shall mean the Seller hereunder. Unless otherwise exempt, this Purchase Order incorporates by reference the EEO Clause contained in 41 C.F.R. Sections 60-1.4, 60-741.5, and 60-250.5.

CONTROVERSIES: Controversies and/or other disagreements between Buyer and Seller arising under this Contract shall be settled by arbitration which shall be a condition precedent to any right of legal action that either Buyer or Seller may have against the other party. Any arbitration shall be in accordance with the rules of the National Grain and Feed Association [NGFA]. At the time notice of arbitration is served by either Buyer or Seller upon the other, (I) if either is a member of NGFA, the NGFA Arbitration Committee shall serve as the arbitrator; (ii) if neither is a member of the NGFA, the American Arbitration Association shall serve as the arbitrator.

# GAVILON ⟨⟩
# Gavilon Grain, LLC

PINE BLUFF AR
509 ISLAND HARBOR MARINA RD
PINE BLUFF, AR 71602
870/419-7008

| | | |
|---|---|---|
| **Our Number:** | | **6052426** |
| **FUTURE ONLY-HTA** | | **Purchase** |
| Contract Date: | | 5/1/2018 |

**S E L L E R**  C & D FARMS
151 COTTONDALE RD

PINE BLUFF        AR        71601

| | |
|---|---|
| Customer No. | 0000240927 |
| Payment Terms: | |
| Broker: | |
| Broker No.: | |
| Delivery Terms: | DLV PINE BLUFF |

SELLER AGREES TO AND CONFIRMS THE SALE OF THE FOLLOWING DESCRIBED COMMODITIES TO GAVILON GRAIN, LLC (BUYER) SUBJECT TO THE TERMS AND CONDITIONS STATED ON THE FACE AND BACK THEREOF. FAILURE TO ADVISE GAVILON GRAIN, LLC IMMEDIATELY BY WIRE OF ANY DISCREPANCY, OBJECTION TO OR DISAGREEMENT WITH SUCH TERMS AND CONDITIONS SHALL BE AN ACCEPTANCE THEREOF.

**COMMODITY: #1YSB  YELLOW SOYBEANS**

**QUANTITY:      5,000.00        BU**

| | |
|---|---|
| WEIGHTS: | DESTINATION |
| GRADES: | DESTINATION |
| TRANSPORTATION: | TRUCK |
| REFERENCE: | |
| MARKET REGION: | PINE BLUFF AR |

| Status | Delivery Dates | Schedule Price | Futures Month | Futures Price | Other Fees | BU Scheduled |
|---|---|---|---|---|---|---|
| Unpriced | 9/1/2018 - 9/30/2018 | $0.00000 | Nov-18 | $10.45000 | $0.03000 | 5,000.00 |

| | |
|---|---|
| Buyer's scale of discounts at time of delivery to apply. | **Total Contracted BUSHELS** ~~DONE~~  **5,000.00** |
| Rules to apply: NGFA | TO BE PRICED DURING AN ACTIVE SESSION OF THE APPLICABLE EXCHANGE (CBOT/KBOT/MGE) PRIOR TO THE SECOND TO LAST TRADING DAY PRECEDING THE FIRST NOTICE DAY |

HTA FEE .03     5000 of 20,000 bu

BUYER OBJECTS TO THE INCLUSION OF ANY DIFFERENT OR ADDITIONAL TERMS PROPOSED BY SELLER. BUYER'S SCHEDULE OF DISCOUNTS TO APPLY. SELLER GUARANTEES GRAIN U.S. GROWN. IF PRICE OF GRAIN IS ON A PREMIUM BASIS, CONTRACT TO BE PRICED OR SPREAD PRIOR TO THE LAST TRADING DAY PRECEDING THE FIRST DELIVERY DAY OF THE FUTURES CONTRACT.

Confirmation Acknowledged:                                          Gavilon Grain, LLC

_____  5-29-18        56 _____  5-01-18
C & D FARMS                Date              SHANE YOUNG              Date

**PLEASE SIGN ONE COPY AND RETURN TO ABOVE ADDRESS.**

# TERMS AND CONDITIONS

Except as modified or limited by the terms and conditions stated herein, the Contract shall be governed by and construed in accordance with the applicable rules and regulations of the exchange, board or association designated on the face hereof, or, if none is designated or Seller is not a member of said exchange, board, or association, then the applicable trade rules of the National Grain and Feed Association in effect on the date hereof, and, to the extent not inconsistent therewith, the applicable provisions of the Uniform Commercial Code.

Seller warrants to Buyer that all grain sold and delivered hereunder will be of good, sound, dry and merchantable quality in accordance with the grade specified herein; that it will have been grown in the Continental United States unless a non-United States grown clause has been made a part of this Contract and so stated on the face hereof; that it will not be adulterated or misbranded within the meaning of the Federal Food, Drug and Cosmetic Act, nor be a commodity which may not, under the provisions of Section 404 or 505 of the Act, be introduced into interstate commerce; that neither any such grain nor the shipment thereof will be in violation of or subject to penalty, seizure or lien under any other federal, state or local law, ordinance regulation quota or order, and all grain sold hereunder will be delivered to Buyer free and clear of any and all liens, encumbrances, security interests, claims and penalties of any kind and nature.

In the event that a party hereto (the "Defaulting Party") becomes insolvent, or suffers or consents to or applies for the appointment of a receiver, trustee, custodian or liquidator of itself or any of its property, or generally fails to pay its debts as they become due, or makes a general assignment for the benefit of creditors, or files a voluntary petition in bankruptcy, or seeks reorganization, in order to effect a plan or other arrangement with creditors or any other relief under the Bankruptcy Code, Title 11 of the United States Code, as amended or recodified from time to time, or under any state or federal law granting relief to debtors then the other party (the "Non-defaulting Party") may (i) immediately cancel this Contract and all other Contracts between the parties hereto, (ii) liquidate such cancelled Contracts in a commercially reasonable manner, and (iii) aggregate such liquidated amounts into a single liquidated settlement amount (the "Settlement Amount") due, which shall be due and payable two (2) business days after written notice by the Non-defaulting Party. In addition, the Non-defaulting Party may set-off any amounts owed by the Defaulting Party to the Non-defaulting Party under any other agreements between the parties against any Settlement Amount owed by the Non-defaulting Party to the Defaulting Party hereunder.

The parties agree that each of them is a forward contract merchant as set forth in 11 U.S.C. Section 101(25). The parties also agree that this Contract and any other commodity contract between the parties are all forward contracts as defined in 11 U.S.C. Section 101(25). The payments and transfers described herein shall constitute "Settlement Payments" or "Margin Payments" as set forth in 11 U.S.C. Sections 101(51A) and (38).

Each Party consents to the recording of all telephone conversations between its representative and the representatives of the other Party.

This Contract is made on the basis of freight rates in effect on the date hereof. Any increase in freight rates taking effect before the full performance of this Contract shall be for the account of Seller unless otherwise adjusted and agreed upon between the parties at the time of the affected shipment.

All shipments of grain hereunder shall be made by Seller to the place of delivery designated herein. Buyer may subsequently designate any reasonable alternate place of delivery to facilitate Seller's performance of this Contract but shall have no obligation to do so. Any increased shipping charges incurred under this provision shall be for Seller's account and any reductions in shipping charges shall be for Buyer's account; provided however, if the designated alternate delivery points are solely for Buyer's convenience, increase shipping charges shall be for Buyer's account.

Unless otherwise specified, each shipment hereunder will be applied to the oldest open contract between Buyer and Seller.

Buyer reserves the right to apply off-grade grain at market difference without first notifying Seller.

Buyer's performance hereunder, or any delay in such performance, including the acceptance of deliveries of grain on the date or dates specified, shall be excused where such failure to perform or delay is attributable to any cause or reason beyond Buyer's control, including without limitation lack of available storage space, equipment breakdown, labor trouble, governmental regulations, transportation difficulties, embargoes, civil disturbances, acts of God, or any other causes of the like or different character beyond Buyer's control.

This Contract is intended by the parties as a final expression of their agreement and is intended also as a complete and exclusive statement of the terms and conditions of their agreement. This Contract is limited to the terms and conditions stated herein, which terms and conditions shall prevail insofar as they might in any way conflict with any terms or conditions of Seller's confirmation.

There are hereby incorporated herein by reference the respective Equal Opportunity Clauses set forth in 41 C.F.R. para. 60-1.4 (a), 41 C.F.R. para. 60-250.4 and 41 C.F.R. para. 60-741.4 to extent the incorporation thereof is required by or necessary for compliance with applicable federal laws, regulations or orders. As used in such clauses, "contractor" shall mean the Seller hereunder. Unless otherwise exempt, this Purchase Order incorporates by reference the EEO Clause contained in 41 C.F.R. Sections 60-1.4, 60-741.5, and 60-250.5.

CONTROVERSIES: Controversies and/or other disagreements between Buyer and Seller arising under this Contract shall be settled by arbitration which shall be a condition precedent to any right of legal action that either Buyer or Seller may have against the other party. Any arbitration shall be in accordance with the rules of the National Grain and Feed Association [NGFA]. At the time notice of arbitration is served by either Buyer or Seller upon the other, (I) if either is a member of NGFA, the NGFA Arbitration Committee shall serve as the arbitrator; (ii) if neither is a member of the NGFA, the American Arbitration Association shall serve as the arbitrator.